## Case No. 8,187.

LEE et al. v. CHILLICOTHE BRANCH OF STATE BANK.

[1 Biss. 325.] [1]

Circuit Court, S. D. Ohio. July Term, 1860.

BILLS OF EXCHANGE—INDORSEMENT—"PAY TO ACCOUNT OF," ETC., IS RESTRICTIVE, AND NOT A TRANSFER — HOLDER OF RESTRICTED BILL IS TRUSTEE — PAYEE HAS POWER TO LIMIT — RESTRICTIVE INDORSEMENT GIVES AN EQUITY — PARTY WHOSE NAME NOT ON BILL CANNOT BE SUED.

1. An indorsement on a bill of exchange, "credit my account," is restrictive, and puts an end to its negotiability. It is an appropriation of the proceeds which renders any other appropriation illegal. The credit should be given when the bill became payable—this is the ordinary course of dealing, and the court will not presume a different course.

2. Whether an indorsement is restrictive depends upon the intention of the parties, as expressed.

3. Such an indorsement implies an open account, which is to be credited, and this can only be done by payment. Entering the bill, either before or after maturity, as a credit on the account, would not be within the order—the words are mandatory.

4. An indorsement to pay for the use, or account of the indorser, is not an assignment of the security, but only an authority to receive the money, and imports that the indorsee receives the bill for a special purpose, and as trustee for the indorser; it is equivalent to a direct notice to every party to whom it may be afterwards presented, that he has not a right to dispose of it as his own property.

5. A holder who takes a bill, the circulation of which is restricted by indorsement, cannot in good faith sue the drawer or acceptor, but holds the bill or its proceeds as trustee for the restraining party.

6. The payee, having the absolute property in the bill, and the right of disposition thereof, has

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the power of limiting the payment to whom he pleases.

7. If a bill be restrictively indorsed, a subsequent indorser takes it upon the same trust that was devolved upon the first indorsee.

8. But the indorsement, though not conveying the property in the bill, gives an undoubted equity to the money to be paid; and this it is the safer and better course to enforce.

9. A party whose name does not appear upon a bill of exchange cannot be sued upon it. His name may be signed by an agent, but it must appear that the agent undertook to bind his principal.

This was an action brought by the plaintiffs, as indorsees of the defendants, on fourteen bills of exchange. The special counts aver that the bills were drawn by certain named persons at Chillicothe, Ohio, on one Edwin Ludlow, of New York, by the name of E. Ludlow, Esq., cashier, Ohio Life Insurance and Trust Company, payable to the order of the defendant, "by the name and style of James B. Scott, its cashier,"—acceptance waived; that the defendant, by its cashier, then and there, for the purpose duly authorized, indorsed and delivered the bills to said Edwin Ludlow, cashier, who indorsed them to the plaintiffs; that they were duly presented and protested for non-payment, and notice given to the defendant. The defendant was a corporation created under the law of Ohio; and the Ohio Life and Trust Company was also a corporation chartered under the laws of Ohio, each being vested with banking powers. The principal office of the trust company has always been in Cincinnati; but for many years its principal cashier kept an office in the city of New York, called its "New York Agency."

Hunter & Dougherty and Henry Stanberry, for plaintiffs, cited the following cases of restrictive indorsements:

Edie v. East India Co., 2 Burrows, 1216; Ancher v. Bank of England, 2 Doug. 637; Treuttel v. Barandon, 8 Taunt. 100; Lloyd v. Sigourney, 5 Bing. 525; Attenborough v. Mackenzie, 36 Eng. Law & Eq. 562; Theobold v. Hare, 8 B. Mon. 39.

Vinton, Thurman, Taft & Perry, counsel for defendant, filed an elaborate brief, citing the following cases on restrictive indorsements:

Snee v. Prescot, 1 Atk. 249; Edie v. East India Co., 2 Burrows, 1227; Ancher v. Bank of England, 2 Doug. 637; Treuttel v. Barandon, 8 Taunt. 100; In re Nunn, 15 E. C. L. 319; Lloyd v. Sigourney, 5 Bing. 525; Gully v. Bishop of Exeter, 15 E. C. L. 527; Rice v. Stearns, 3 Mass. 227; Wilson v. Holmes, 5 Mass. 544; Drew v. Jacocks, 2 Murph. 138. No action can be maintained against the defendant upon these bills because his name does not appear upon them. Pentz v. Stanton, 10 Wend. 271; Stackpole v. Arnold, 11 Mass. 28; Leadbitter v. Farrow, 5 Maule & S. 348; Wilson v. Rastall, 4 Term R. 757.

The defendant's cashier had no power to transfer the bill. No such power was expressly given him, and he could not derive it from custom. Hallowell & A. Bank v. Hamlin, 14 Mass. 180; Hartford Bank v. Barry, 17 Mass. 97; Wyman v. Hallowell & A. Bank, 14 Mass. 58; Salem Bank v. Gloucester Bank, 17 Mass. 29. The transfers by Ludlow to the plaintiffs being fraudulent, the onus lies on the plaintiffs to prove bona fides and the payment of a valuable consideration, or parting with value. McKesson v. Stanberry, 3 Ohio St. 156; U. S. v. Price [Case No. 16,090]; Paterson v. Hardacre, 4 Taunt. 116; Smith v. Braine, 3 Eng. Law & Eq. 379; Woodhull v. Holmes, 10 Johns. 231; Skilding v. Warren, 15 Johns. 270; Brown v. Taber, 5 Wend. 566; Vallett v. Parker, 6 Wend. 615; Wardell v. Howell, 9 Wend. 170; Micklethwaite v. Thebaud, 4 Sandf. 97. The bills were merely pledged by Ludlow to the plaintiffs, as collateral security for a precedent indebtedness, or upon account. This leaves the equities open. Field v. Holland, 1 Am. Lead. Cas. (5th Ed.) 334; Roxborough v. Messick, 6 Ohio St. 448; Bay v. Coddington, 5 Johns. Ch. 54; Coddington v. Bay, 20 Johns. 637; Rosa v. Brotherson, 10 Wend. 86; Smith v. Van Loan, 16 Wend. 659; Jones v. Swan, 6 Wend. 589; Hart v. Palmer, 12 Wend. 523; Manhattan Co. v. Reynolds, 2 Hill, 140; Stalker v. McDonald, 6 Hill, 93; Furniss v. Gilchrist, 1 Sandf. 53; Bank of St. Albans v. Gilliland, 23 Wend. 311; Small v. Smith, 1 Denio, 583; Wardell v. Howell, 9 Wend. 170; Stewart v. Small, 2 Barb. 559; Spear v. Myers, 6 Barb. 445; Bramhall v. Beckett, 31 Me. 205; Jenness v. Bean, 10 N. H. 266; Williams v. Little, 11 N. H. 66; Prentice v. Zane, 2 Grat. 262; Petrie v. Clark, 11 Serg. & R. 377; Kirkpatrick v. Muirhead, 16 Pa. St. 117; Kimbro v. Lytle, 10 Yerg. 417, 428; Brooks v. Whitson, 7 Smedes & M. 513; Reddick v. Jones, 6 Ired. 109. Express proof of actual knowledge by the purchaser is not required. His knowledge may be proved by circumstances and constructive notice may suffice. Wiggin v. Bush, 12 Johns. 306; Brown v. Taber, 5 Wend. 566; Comstock v. Hoag, Id. 600; Payne v. Cutler, 13 Wend. 605; Small v. Smith, 1 Denio, 583; Solomons v. Bank of England, 13 East, 135, note; Goodman v. Harvey, 4 Adol. & El. 870; Clarke v. Spence, 31 E. C. L. 212. If a note or bill be peculiar in its form, or have indorsed upon it, or written on its face, any marks or matter the purchaser is put upon inquiry. Fowler v. Brantley, 14 Pet. [39 U. S.] 318; Jones v. Fales, 4 Mass. 245, 252, 253; Springfield Bank v. Merrick, 14 Mass. 322; Heywood v. Perrin, 10 Pick. 228; Barnard v. Cushing, 4 Metc. [Mass.] 230; Shaw v. First M. E. Soc. in Lowell, 8 Metc. [Mass.] 226; Fletcher v. Blodgett, 16 Vt. 26; Sanders v. Bacon, 8 Johns. 485.

McLEAN, Circuit Justice. No particular form of words is essential to an indorsement,

if the words used import a transfer of the title to the bill and designate the transferee. Story, Bills, § 204. Indorsements are either in full or in blank; a full indorsement is that by which the indorser orders the money to be paid to some particular person by name; a blank indorsement consists only of the name of the indorser, (1 Jac. Law Dict. 324), as where the indorser simply writes his name on the back of negotiable paper. There are also restrictive indorsements, which stop the currency of the bill, and it often becomes an important question whether the indorsement is in full, in blank, or restrictive. On this depends the decision of the important case now before us. Where the indorsement is in full or in blank, without restriction, the holder may fill up the blanks and perfect his title at pleasure. In the leading case of Edie v. East India Co., 2 Burrows, 1216, a new trial was granted, because at the trial the usage of merchants was proved, which the court held to be erroneous, and on this ground a new trial was granted. On argument the declaration was held to be good on demurrer, although the assignment on the note was alleged to have been made to Witherhead, without saying to "him and order."

Every one knows the splendid reputation of Lord Mansfield for his liberal views on commercial law, which were greatly in advance of Kenyon and others, but were still, in some things, behind the present day. By some of the judges in the above case, a restrictive indorsement had never been heard of, and doubts were expressed whether the negotiability of an instrument could be restricted. The case of Ancher v. Bank of England, 2 Doug. 637, was upon a bill of exchange payable to A or order. A indorsed it as follows: "The within must be credited to Capt. Morton Lassal Dahl, value in account." This was held by Lord Mansfield to be a restrictive indorsement, though Butler was of a contrary opinion. A majority of the court held that the indorsement was simply a request to pass the amount to Dahl's credit. Lord Mansfield said the indorser did not mean to make himself answerable, as indorser, or to enable Dahl to raise money on the bill. So in Treuttel v. Barandon, 8 Taunt. 100, it was held that the indorsement, "pay to J. P. Rouse or order, on account for Mr. Treuttel & Wurtz," was restrictive. And in Lloyd v. Sigourney, 5 Bing. 525, the indorsement was in these words: "Pay to Samuel Williams, Esq., of London, or his order for my use," and the court says, "Whoever reads the indorsement must perceive that its operation is limited."

It is said the indorsements in this case are capable of various constructions, and have no definite meaning. The direction to credit the account of the indorser is addressed to Ludlow, it is said, and not to the drawers; Ludlow is the drawee, but on the face of the bills his acceptance is waived, and the bills were not sent to him for acceptance, but for some other purpose, either to discount them, as urged by the plaintiffs, and then credit the indorser with the proceeds, or to credit the bills in account to the indorser, or to hold them until payment by the drawers, and then credit the amount to the indorser. And it is contended, that "on the face of the instrument, it is impossible to say what was meant." The bills were drawn by certain persons at Chillicothe, Ohio, on Edwin Ludlow, of New York, as cashier of the Ohio Life Insurance and Trust Company, payable to the order of the defendant, indorsed, "Credit my acccount. James B. Scott, Cashier." The bill had some time to run, but the credit was to be given when the bill became payable. This was the ordinary course of dealing, and the court will not presume a different course without proof. The thing to be done under the indorsement, was subject to no contingency. The direction to credit the account of Scott, cashier, was indorsed upon the bill, and this put an end to its negotiability. It was an appropriation of the proceeds of the note, and which rendered any other appropriation of them illegal.

Whether an indorsement be restrictive or not, depends upon the intention of the parties, as expressed. "Pay to J. S. only;" "pay to A for my account;" "pay the contents to my use;" "pay the contents to the use of a third person;" "carry this bill to the credit of A, a third person;" "pay to A B, or order, for my use;" "pay to A B for my account;" "pay the within to A B, for the use of C D;" "pay the money to my use;" "pay the money to my servant for my use;"—these are specimens from cases where the indorsements have been held restrictive. More might be added, but the above are sufficient, and they all rest upon the principle that from the nature of the restriction, the negotiability of the bill ceases. Had Ludlow filled up an indorsement over Scott's signature, under the restriction, it could only have been done thus,—"Pay E. Ludlow, cashier, to credit my account. Jas. B. Scott;" or "Pay E. Ludlow, cashier, and credit my account. Jas. B. Scott, Cashier;" or "Pay E. Ludlow, cashier, credit my account. Jas. B. Scott, Cashier."

"'Pay J. H. for my use, or for my account,' shows the intent of the indorser, and is barely an authority to receive the money upon it. It imports that the indorsee receives the bill for a special purpose, and as a trustee for the party indorsing; and is equivalent to a direct notice to every person to whom it may be afterwards presented, that he has not a right to dispose of it as his own property." Edw. Bills & N. 277.

Courts will take notice of a usage, in transmitting bills from one part of the country to another, for collection especially, where the forms of indorsements are influenced by the usage. Bank of Washington v. Triplett, 1 Pet. [26 U. S.] 25, 30; Bowling v. Harrison, 6 How. [47 U. S.] 258; Wallace v. McCon-

nell, 13 Pet. [38 U. S.] 150. But this principle is clearly settled without the aid of usage, by judicial decision. The words, "credit my account," seem to be too explicit to be mistaken, especially in a commercial transaction. This implies an open account, which is to be credited, and this could only be done by payment. Entering the bill before or after it becomes due, as a credit on the account, would not be within the order, as in a proper sense, no credit could be entered without payment. The words "credit my account, when due," were mandatory, and could only apply to the account specified. This is too clear for controversy. To apply the proceeds of the bill to a credit on any other account than the one specified, would be a fraud on the defendant, under the notice, and a court of equity would restrain such payment or give a judgment at law for its recovery.

Shortly before the failure of the trust company, Ludlow, as plaintiffs allege, indorsed the bills in question to the plaintiffs, as collateral security for loans which they made to the trust company. A holder who takes a bill, the circulation of which was restricted by an indorsement, cannot, in good faith sue the drawer or acceptor upon it, but holds the bill or the money raised by him as the trustee of the restraining party. "The payee or indorsee having the absolute property in the bill, and the right of disposing thereof, has the power of limiting the payment to whom he pleases; and consequently, he may make a restrictive indorsement: thus he may stop the currency of the bill, by giving a bare authority to receive the money, as by an indorsement requesting the drawee to "pay to A for my use," or to "J. S. only," or, "the within must be credited to A B," which modes prevent a blank indorsement from being filled up by the indorsee, so as to convey any interest in the bill to himself, and from making a transfer of the bill, &c.; and when made for the use of the indorser, is renewable in its nature by him like a power of attorney." Chit. Bills, 233. An indorsement, to pay the contents to my use, or to the use of a third person, or to carry this bill to the credit of a third person, is not an assignment of the security, but is only an authority to pay the money agreeably to the direction of the indorsement. Chit. Bills, 232, note 1.

The declaration is that the defendant indorsed the bills to Ludlow, and if he had filled up the instrument it would have read, "Pay to E. Ludlow, to credit my account. James B. Scott, Cashier." Thus showing that the money was to be paid to Ludlow, not for himself, but for the use of James B. Scott, cashier. Or suppose the plaintiffs were to strike out Ludlow's indorsement and fill up Scott's indorsement to themselves, which they may do if Scott's is a blank indorsement. It would then read, "Pay Lee & Co., to credit my account. James B. Scott, Cash'r;" and this would show that the money, if paid, would belong to the defendant, and consequently that Lee & Co. have no right to the money. An indorsement "Payable to J. S. only," or by indorsing it "The within must be credited to J. S." (Ancher v. Bank of England, 2 Doug. 637), or by any other words clearly demonstrating his intention to make a restrictive and limited indorsement, would be sufficient (Chit. Bills, 232, 233, and notes). Judge Story says: "It is difficult to assert what language will amount to a restrictive indorsement, or in other words, what language is sufficient to show a clear intention to restrain the general negotiability of the instrument, or the general purposes to which the indorsement might otherwise entitle the indorsee to apply it. Where the indorsement is, 'Pay to A B only,' the word 'only' makes it clearly restrictive, and does not authorize a payment or indorsement to any other party. So if a bill should be indorsed, 'The within to be credited to A B,' or, 'Pay the within to A B for the use of C D,' it would be deemed a restrictive indorsement, so far as to restrain the negotiability, except for the very purposes indicated in the indorsement. In every such case, therefore, although the bill may be negotiated by the indorsee, yet every subsequent holder must receive the money subject to the original designated appropriation thereof." Story, Bills, § 211.

This leaves the question open as to what cases the lien attaches and where it does not. On this head the authorities to some extent are in conflict. Lord Hardwicke says in Snee v. Prescot, 1 Atk. 249: "Promissory notes and bills of exchange are frequently indorsed, 'Pay the money to my use,' in order to prevent their being filled up with such an indorsement as passes the interest." If no valuable consideration appears to have been paid for the bill, none will be presumed. In Ancher v. Bank of England, an indorsement that "the within must be credited to Captain Morton Larsen Dahl, value on account," was a restrictive indorsement, and stopped the negotiability of the bill. And Lord Mansfield said: "It does not seem to me that, after the special indorsement by Morterlin, Dahl himself could have indorsed it over." And Willes, J.: "I am of the same opinion. The question is whether the negotiability is not restrained by the indorsement; and I think it is." Ashurst, J.: "I am of the same opinion. I think Dahl himself could not have indorsed it." In Drew v. Jacocks, 2 Murph. 138, it was said: "Indorsements are of two kinds, general and restrictive, the latter precluding the person to whom it is made from transferring the instrument over to another, so as to give him a right of action, either against the person imposing the restriction or against any of the preceding parties." But if the bill be restrictively indorsed, the subsequent indorsee takes it upon the same trust that was devolved upon the first indorsee. Hence he can maintain no action against the restraining indorser. He is a mere agent and trustee

for his principal, and whoever takes the money holds it under a similar trust. Lloyd v. Sigourney, 5 Bing. 525. This indorsement was held to be restrictive. "A bill of exchange drawn in America, on a house in London, payable to order, was indorsed by the payee generally to A, and by him in these words: 'Pay to B, or his order, for my use.' B applied to his banker to discount the bill, and they, without making any inquiry, did so, and applied the proceeds to the use of B. Held that the indorsement was restrictive; that the property in the bill remained in A, and that he was entitled to recover the amount of the bill from the bankers." Chief Justice Parsons says: "It is also settled that when a negotiable security is indorsed, pay the contents to my use, or to the use of a third person, or carry this to the credit of a third person, such an indorsement is not an assignment of the security, but merely an authority to pay the money agreeably to the direction in the indorsement." Rice v. Stearns, 3 Mass. 225. Chief Justice Parsons said: "The merits of this question depend on the interest which Wilson, the plaintiff, had in the bill. His right to put the bill in suit in his own name must depend upon the effect of the indorsement. It is expressly made to him for the use of the payees. Upon this indorsement, had there been no acknowledgment of value received in account, Wilson would have no property in the bill general or special, and he could not recover upon it in his own name. But admitting, by the acknowledgment of that value received in account, it is the usage of merchants to consider the bill as transferred to the indorsee, as the factor of the indorser, who may sue it, either in his own name or in the name of the indorser, of which we give no opinion; yet the same facts may be given in evidence against the factor as against the principal." Wilson v. Holmes, 5 Mass. 545.

On a pretty extensive view of the authorities, it is found that under some of the restrictive indorsements, no suit can be maintained against the indorser by the assignee. But the restrictive nature of the indorsements, which do not transfer the property in the bill, but operate as an appointment to pay the money, especially where the bill has been assigned since the transfer, makes it the safer and better course to enforce the equity against the holder of the bill. The indorsement on the bill, although it may not convey the property in the bill, gives an undoubted equity to the money directed to be paid. And this may be recovered against any one who has possession of the bill. No action can be maintained on these bills, as the name of the defendant does not appear upon them. They are drawn by certain individuals, payable to James B. Scott, cashier, and indorsed by him without any designation as to his agency. He, therefore, cannot sustain a suit on the bill, as he has not a legal title to it. He may become a guarantor on the bill. In Pentz v. Stanton, 10 Wend. 271, it is held that the plaintiff cannot recover upon the bill of exchange against the present defendant; his name nowhere appears upon it, and Chitty says it is a general rule that no person can be considered a party to a bill unless his name or the name of the firm of which he is a partner, appears on some part of it. In Fenn v. Harrison, 3 Term R., 762, Buller, J., observes that in the case of bills of exchange we know precisely what remedy the holder has if the bill be not paid; his security appears on the face of the bill itself; the acceptor, the drawer and the indorsers are all liable in their turn, but they are only liable because they have written their names on the bill. A person may draw a bill of exchange by his agent, and it will be obligatory. But the agent must sign the name of the principal, or it must appear on the face of the bill itself. The form is not important if the name of the principal appears on the bill. Story, Ag. §§ 147, 154, 155. Where a party is sued on an express contract, it must at least appear on the face of the instrument that the agent undertook to bind the principal. The appellation by which the contractor may be distinguished is of no importance, provided it be sanctioned by the principal and embraced in the power conferred on the agent. Judgment for defendant.

[For another case upon the same points, and involving the same subject-matter, and between the same parties, and apparently the same case, see Case No. 8,186.]