UTICA,
July, 1834

Beebee
v.
Robert.

## L. & W. T. Beebee *vs.* Robert.

In a purchase of *packed cotton*, although the purchaser examines the article by *personally* taking samples from a great number of bales, and then from the samples selects a quantity of bales, which he purchases, the sale thus made is a *sale by sample*, and in judgment of law, *amounts to a warranty*, on the part of the vendor, that the bulk of the cotton corresponds in quality with the samples.

A purchaser who, before suit, has submitted to a vendee a statement of his damage, in consequence of the article sold being of a quality inferior to what it had been warranted, is not limited in a suit subsequently commenced to the amount specified in such statement, but may recover all the damage he can show he has sustained, if the jury are satisfied that the statement of damages was exhibited to the vendor with a view to a compromise.

A *principal*, when *discovered*, is liable on the contract of his *agent*, where goods are bought by an *agent*, who does not disclose the name of his *principal* at the time of the purchase; and where the name of the principal is disclosed after the sale, so as to give an action by the vendor against him for the price of the goods sold, the *principal* may, on his part, maintain an action against the vendor, for a violation of his part of the agreement: as, for instance, a breach of warranty.

THIS was an action of *assumpsit*, for breach of warrantry in the sale by sample of a quantity of cotton, tried at the Jefferson circuit in July, 1833, before the Hon. NATHAN WILLIAMS, then one of the circuit judges.

In April, 1830, the plaintiffs, residing at Watertown, in Jefferson county, wrote to B. L. Woolley, a broker, residing in the city of New-York, to purchase and forward to them at Watertown 20 bales of prime cotton. Woolley called upon the defendant, who had cotton for sale, and told him that he had an order from a manufacturer, and wanted to purchase good cotton. · The defendant in his counting-room exhibited to Woolley *samples* of his cotton, which Woolley examined and made a bargain for 25 bales, to be selected from two separate lots or parcels, on condition that, upon inspection of the cotton *and on drawing fresh samples*, they, the fresh samples, should be as good as the samples exhibited to him in the counting-room. Woolley and the defendant repaired to the loft where the cotton of the defendant was stored, and where, at that time, the

defendant had between 40 and 50 bales. New samples to the number of 33 or 34 were drawn, some by Woolley and some by the defendant; and from the samples thus drawn Woolley made a selection of 25 bales, for which he agreed to pay 11 cents per lb. at 4 months credit, adding 2 per cent. for the credit. A bill of the cotton was delivered to Woolley, for which he gave his own note. At the time of the purchase, he told the defendant he purchased on an order, but did not say for whom the purchase was made. On the same day, however, he told the defendant that he bought the cotton for the plaintiffs. On the 3d of May, Woolley shipped the cotton to the care of a mercantile house at Utica, and forwarded to the plaintiffs an invoice of the 25 bales of cotton, the weight of which was 9005 lbs., and which, with the charges and commissions, amounted to $1037,18. The cotton was received by the plaintiffs, and turned into a cotton factory called the Jefferson Cotton Mills," to be worked up; which factory was owned by an incorporated company, in which the plaintiffs were the principal stockholders, and in the management of which they were the principal agents. The company was incorporated before the receipt of the cotton, but was not organized, and did not go into operation under its charter until after the order for the cotton was given by the plaintiffs. It was soon discovered that some of the bales contained damaged cotton, but not until after a quantity of it had been worked up. An inspection was then had by the workmen in the factory, and an appraisement made by them at the request of the plaintiffs, and a certificate given that in 5 bales there was bad cotton to the amount of about 1400 lbs., and in the other bales about 100 lbs., which certificate, with a statement of their damages, was sent by the plaintiffs to the defendant, and *Woolley*, the factor, at the request of the plaintiffs, called on the defendant to settle the concern; he testified that the amount which the plaintiffs offered to accept from the defendant was $182,53, but that he understood that they offered to *settle* for that sum, and that their damages exceeded that sum. The defendant not complying with the offer to settle, this suit was brought; and the plaintiffs now proved that three fourths of the cotton contained in 5 of the bales was wet, rotten, mat-

ted, and otherwise damaged ; that 3 bales were fair cotton, and the remaining 17 bales were not worth more than half the price which Woolley had given for the cotton. Two of the workmen, who had united in the inspection and appraisement above referred to, and in giving the certificate transmitted to the defendant, testified, that when they made the estimate, they had not seen the samples produced on the trial by *Woolley;* that the estimate was not made in reference to samples, nor was it made upon any part of the cotton, except upon that which was wholly spoiled and unfit for use. The defendant proved that he was not the owner of the cotton, but sold the same on commission ; that it was a matter of public notoriety, that when damaged cotton is fraudulently packed, it is packed in or near the middle of the bale ; that Wolley was not restricted in his examination ; and that the usual mode of purchasing by sample is, to examine the samples at the office of the broker, or commission merchant, or other person offering the cotton for sale, and not to inspect the bales, or draw fresh samples. It appeared, however, that the bales of cotton of the defendant were piled up five tier high, and were accessible only at the ends ; that in the examination of cotton by a purchaser, it is not customary to cut open the bales, or to sample on the sides. Samples are taken by boring into the bale with a large gimblet, about a foot long, called a sampler ; round bales are sampled at the ends, and square bales near the ends.

When the plaintiff rested his cause, and before any evidence was given for the defendant, a motion was made to nonsuit the plaintiffs, on the following grounds : 1. That there was no privity of contract between them and the defendant, the purchase having been made in the name of *Woolley;* 2. That the cotton having been bought by an incorporated company, called the *Jefferson Cotton Mills,* the action should have been brought by that company ; 3. That if the plaintiffs bought the cotton and transferred it to the company, inasmuch as it did not appear that they sold with warranty, or were liable for any defects in the cotton, the plaintiffs had not shown that they had sustained any damages ; and 4. That the sale was not a sale by sample, and there not being a warranty, either express or implied, the action could not be sustained ; which

several objections, urged against a recovery by the plaintiffs, were overruled by the judge, and the defendant's counsel excepted. At the close of the testimony, the counsel for the defendant also insisted, that if the plaintiffs were entitled to recover damages, they ought not to recover beyond the quantity of damaged cotton stated in the appraisement made at the request of the plaintiffs; that is, beyond the cost of about 1500 lbs. of damaged cotton, adding thereto the expense of transportation; and that the recovery should be limited to the amount of damaged cotton in the *twenty* bales, the quantity specified in the order to Woolley. The judge charged the jury, that the plaintiffs were entitled to recover, and in respect to the objection last urged by the defendant, he instructed them, that the statement and appraisement of the damages transmitted to the defendant would be conclusive upon the plaintiffs, unless made and sent with a view to a compromise; and whether made and sent with such view or not, was a question of fact for them to decide. If they should find that it was merely a proposition for a settlement, he instructed the jury that the plaintiffs were entitled to recover to the full amount of the damages proved to have been sustained by them, and were not to be limited to the sum specified in the statement. The defendant excepted to the charge of the judge. The jury found a verdict for the plaintiffs, with $500 damages. The defendant applied for a new trial, on the several grounds urged by him at the circuit, and also on the ground of *surprize* as to the amount of the plaintiff's claim, alleging that he had been misled by the certificate furnished to him by the plaintiffs, in which the whole extent of their claim was limited to the 1500 lbs. of bad cotton. The answer to which will appear in the opinion delivered by the court.

*J. A. Spencer*, for the defendant.

*J. H. Bronson*, for the plaintiff.

*By the Court*, SUTHERLAND, J. The suit was properly brought in the name of the present plaintiffs. Woolley acted as their factor or agent merely, in the purchase of the cotton; he

had no interest in the transaction beyond his commissions : he is not responsible to the plaintiffs for the defect in the quality of the cotton : he has suffered no injury, and no action could be sustained in his name against the defendant for the breach of the implied warranty—there was no express contract or agreement with him. If Woolley, the factor, had failed to pay for the cotton, Robert could have recovered its value from the plaintiffs. When goods are brought by a broker or other agent, and he does not disclose his principal at the time, the principal, when discovered, is liable on the contracts which his agent has made for him. 2 Livermore on Agency, 200. *Waring* v. *Faverick*, 1 Campb. 85. *Kymer* v. *Suwercropp*, id. 109. 4 Taunt. 576, n. a. *Pentz* v. *Stanton*, 10 Wendell, 271.

Where the principal is disclosed at the time of the purchase, it then becomes a question of fact, to be determined from all the circumstances in the case, whether the vender relied exclusively upon the credit of the agent or not. If he did, he cannot afterwards resort to the principal. 2 Liver. 200, 201. 15 East, 62. 4 Taunt. 574. If the plaintiffs might have been made responsible to the defendant for the purchase money upon this contract, it would seem to follow that there is sufficient privity of contract between them, to enable the plaintiffs to maintain this action against him for the alleged violation of his part of the agreement. The general rule is, that the action should be brought in the name of the party whose legal interest has been affected, against the party who committed the injury. 1 Chitty's Pl. 1. Hammond on Parties to Action, 3. 1 Bos. & Pull. 101, n. c. 3 id. 149, and note. *Dawes* v. *Peck*, 8 T. R. 330. 10 Johns. R. 387. *Yates* v. *Foote*, 12 id. 1. In *Spencer* v. *Field*, 10 Wendell, 87, and *Sailly* v. *Cleaveland & Hutton*, id. 156, the question as to the proper parties to an action was discussed at length, and most of the authorities were there referred to. Those cases clearly show that this action is properly brought in the names of the present plaintiffs.

If the cotton was, subsequently to the original purchase by the plaintiffs sold by them to the Jefferson Cotton Mills, which

is not satisfactorily shown, it would in no respect affect their right to maintain this action.   There is no evidence whatever as to the terms and condition of the sale, whether it was with or without warranty, whether at the original, or at a reduced price in consequence of its inferior quality.   If the cotton was actually sold to the company, it is to be presumed to have been sold either with warranty or at its fair value.   But the evidence upon that point is altogether too vague to affect in any manner the plaintiffs' right to maintain this action.

Was this a sale by sample ?  If it was, it is not disputed that it amounted in judgment of law to a warranty, on the part of the vendor, that the bulk of the cotton corresponded in quality with the samples exhibited.   The law upon this point is too well settled to be questioned, 4 Cowen, 440 ; 6 id. 354 ; 9 Wendell's R. 20, and the authorities referred to in those cases. Woolley, the broker who made the purchase for the plaintiffs, states that he called at the defendant's counting room and examined his samples, told him that he had an order from a manufacturer, and wanted good cotton.   The samples were in the defendant's counting room   Witness examined them and made a bargain for 25 bales, to be selected from two separate lots, *on condition that, upon inspection of the cotton and on drawing fresh samples, they, the fresh samples, should be as good as the samples exhibited to him.*   The witness and the defendant accordingly went and drew samples from the two lots, and the witness then selected 25 bales from the whole.   The defendant and the witness each drew samples, and the witness made the selection and marked the bags.   He selected the 25 bales in question, by comparing the samples which were then drawn with the samples shown to him by the defendant at his counting room.   The samples were drawn with a common cotton sampler, about a foot long; they were taken in the usual way, from the ends of the bales.   The drawing of these second samples was merely for the purpose of testing the correctness of those first exhibited.   Woolley, the factor, had previously agreed to purchase 25 bales, if the second samples should prove as good as the first.   Subject to that consideration alone, the contract was complete before the second samples were drawn, and the only object in drawing them was to

satisfy the agent that the first samples were fairly drawn. It falls directly within the case of *Gallagher & Mason* v. *Waring*, 9 Wendell, 20. It is entirely immaterial whether the samples were drawn by the plaintiffs' broker or by the defendant himself; they were both present, and it would seem, each drew nearly an equal quantity. In *Gallagher* v. *Waring*, above referred to, the sale was made by the defendants' broker, the defendants not being present; and the question arose whether he was not the agent of the plaintiffs in drawing the second samples, they having been drawn at their request, and not having been seen by the defendants; and the argument was, that the sale was made upon the faith of the second samples, and not of the first, which had been furnished by the defendants; and that the defendants could not be held responsible in relation to them, as they had never seen or furnished them. But it was satisfactorily answered, that, as both samples were alike in quality, the only effect of drawing the second was to show the accuracy of the first, and that it was in fact a sale by the first samples. But in this case, if the sale had been made on the strength of the second samples, as they were seen and exhibited by the defendant himself, it would afford no ground of objection to the plaintiffs' recovery. But in this, as in the case in 9 Wendell, both set of samples were of the same quality.

In *The Oneida Manufacturing Society* v. *Lawrence*, 4 Cowen, 444, the chief justice remarked, that every sale of packed cotton must be considered in the nature of a sale by sample. It seems to have been contended, in that case that it was not a sale by sample, because the plaintiffs' agent saw the bags, in which the cotton was packed, before he made the purchase; and that it therefore fell within the general rule, that where the vendee has an opportunity of examining the commodity, the vendor is not responsible for any latent defect, without fraud or express warranty. But from the very nature of this article, and the form in which it is sent to market, no effectual examination can be made without breaking up the bales. This is never done; the trouble and expense of re-packing effectually prevents it. Although the plaintiffs' agent in this case saw the bags, and drew samples from them,

he had no opportunity of examining the bulk of the commodity ; he was compelled still to rely upon the samples. It was therefore a sale by sample, and the evidence clearly shows that the bulk of the cotton was of very inferior quality to the samples exhibited.

The jury have found that the statement ſof damages, which was made out by the plaintiffs and sent to the defendant, was made and sent with a view to a compromise ; and the judge correctly decided that if it was so made, the plaintiffs were not bound by it, but might recover all the damage which they could show they had sustained. The motion for a new trial must therefore be denied, on the bill of exceptions.

As to the application for a new trial, on the ground of *surprise :* The allegations cf the defendant are fully answered and rebutted by the affidavits on the part of the plaintiffs, one of whom states that in April, 1831, about two months before the trial, he told the defendant that they had sustained very serious injury from the bad quality of the cotton ; and that if driven to a trial to get their damages, they should get all they could, and that the defendant might rely upon it, they should make out a bad case against him. But independently of this direct information, the circumstances of the case by no means authorized the defendant to believe that the only damage claimed by the plaintiffs was the price of the cotton actually rotten and good for nothing. The plaintiffs were willing to take that, if promptly allowed, to avoid the delay, vexation and expense of a law suit ; but if driven to an action, the defendant ought to have known that they would prove all the damage they could ; and that if 1500 lbs. of the cotton was rotten and good for nothing, the quality of the rest must have been more or less affected by it. This ground of the application for a new trial is not sustained.

New trial denied.