McMONNIES *vs.* MACKAY and LUSHER.

Where goods are bought by an agent who does not disclose the name of his principal, at the time of the purchase, the principal, when discovered, is liable to the vendor on the contract made by the agent.

Where an agent, on purchasing goods, although disclosing his agency, gives his own notes for the price, which are received by the vendor in payment, the principal is not liable for the purchase money.

If vendors deal with an agent as principal, and without any knowledge, inquiry or information as to his agency, taking the promissory notes of the agent in payment of the price of the goods, and the agent subsequently effects a compromise with the holders of the notes, by which the latter accept from him certain moneys and securities in full payment and discharge of the notes ; this will discharge the employer of the agent from all liability for the price of the goods purchased.

APPEAL from a judgment entered on the report of a referee. The following facts were found by the referee: That the defendants, in April, 1857, agreed with Thomas McNair to purchase teas, and sell the same for him, as his commission merchants and factors, on a commission of $2\frac{1}{2}$ per cent for buying, and $2\frac{1}{2}$ per cent for selling with guaranty. That, in pursuance of that agreement, they purchased on his account, in April, 1857, 3540 half chests of tea, for which they paid $17,998.75 in cash, and $35,876.22 in their notes of various dates, payable at six months, which (at average time) became due on the 8th day of October, 1857; and in June and July, 1857, resold on his account 3489½ chests of the same, on six and eight months' credit, for the net sum (over and above charges and commissions) of $58,-211, which became payable on the 2d of January, 1858; and on the 11th of May, 1858, resold the other fifty-one half chests (on six months' credit) for $1095. That in June, 1857, they also purchased for his account, under the aforesaid agreement, 667 half chests of tea, for which they paid $12,013.82 in their notes of various dates, at six months, which (at average time) matured December 15th, 1857, which they resold on his account in June, 1857, on a like credit, for $8,877.60. That on or about the 19th of July, 1857, they also purchased on his account, and under the aforesaid agreement, 1188 half chests of tea, for which they paid $24,660.25 in their notes of various dates, at six months, which (at average time) matured January 19th, 1858. That on or about the 19th of July, 1857, the said Thomas McNair also purchased from the defendants 449 half chests of tea for $10,190.40, upon a credit of six months, which they also retained to sell on his account. That in September, 1857, the defendants, without the knowledge, consent or concurrence of said Thomas McNair, hypothecated the two last mentioned parcels of 1188 and 449 half chests of tea with Wilmerdings & Mount, auctioneers, in the city of New York, for a cash advance thereupon obtained by them thereon of

about $22,000; and such teas were held by said Wilmer-dings & Mount, under such pledge, until September and October, 1858, when they were resold by them to repay such advance, at much less than the cost price. That in the fall of 1857 the defendants failed in business, and in April, 1858, succeeded in effecting compromises with the holders of the said notes, by which they obtained a deduction on the principal amount of the notes given by them upon said purchases of 3540 half chests of tea, and as of the day of their maturity, of $9482—a deduction upon the principal amount of said notes given by them upon said purchase of 667 half chests of tea, and as of the date of their maturity, of $3,604.18; and a deduction upon the principal amount of said notes given by them on the said purchase of the 1188 chests of tea, and as of the date of their maturity, of $5,509.58. That the said several notes were, upon such compromise, surrendered, and the defendants were released and discharged by the holders thereof from all further claim thereon; that the defendants did not make any agreement with the holders or owners of said notes, or any or either of them, to pay the difference between the amounts of said notes and the amounts by them so paid, when or as soon as they were or could be in a condition to do so. That Mc-Nair, on the 5th day of April, 1857, had on deposit, in the hands of the defendants, the sum of $8,052.30 principal, and the interest that had accrued thereon from August 7th, 1855, (when it had been originally deposited with said John M. Mackay,) to be held as a margin against any loss which should accrue to the said defendants in their said transactions on account of the said Thomas McNair. And the referee further found that the said Thomas McNair, by an assignment dated the 23d day of October, 1858, assigned and transferred to the plaintiff all his accounts, dues, debts and demands against the defendants, and that the plaintiff is the holder and owner of all the demands in the complaint mentioned. And the referee found, as matter of law, that

the said Thomas McNair was, and the plaintiff as his assignee is, entitled to the benefit of the said compromises made by the defendants with the holders of the notes given by them upon the said two parcels of 3540 and 667 chests of tea; and that the defendants are not entitled, as against the said McNair, or the plaintiff as his assignee, to any credit for payments upon said purchases, beyond the amount actually paid by them over and above the sums allowed them on such compromise. That the defendants having, without the consent or concurrence of McNair, pledged the said two parcels of 1188 and 449 chests of tea with Wilmerding & Mount, for the advance made them thereon upon their own account, were thereby guilty of a conversion of said two parcels of tea to their own use, and were not therefore authorized to hold said McNair liable upon any of his previous contracts in respect thereto, or for any losses that occurred thereon. And he further found, as matter of fact, that the defendants were indebted to the plaintiff in the sum of $24,976.38, and that the plaintiff was entitled to recover against the defendants that sum, besides costs, and the referee ordered judgment accordingly.

*Wm. C. Barrett*, for the appellant.

*B. F. Mudaett.* for the respondent.

*By the Court,* SUTHERLAND, P. J. The two important questions in this case were: 1st. Whether McNair should have been debited with the full amount of the notes given by the defendants, for the teas, or only with the amount paid or secured for such notes by way of compromise. 2d. Whether the pledging of certain parcels of the teas to Wilmerding & Mount, by the defendants, was a wrongful conversion of them to their own use, which released McNair from all liability for the subsequent losses on those parcels. The referee found in favor of the plaintiff on both of these questions.

Mcmonnies *v.* Mackay.

In view of the character and importance of these questions, the findings of fact by the referee are singularly meagre and incomplete. In view of the first questions, there are no findings on the questions of fact, whether the defendants in purchasing the teas disclosed the name of their principal; whether the notes were taken by the vendors in absolute payment; whether exclusive credit was given by the vendors to the defendants; whether, when the defendants effected the compromise with the holders of the notes, and the notes were surrendered, and the defendants released and discharged, the holders of the notes knew, or had been informed, that the teas had been bought by the defendants, as the agents or factors of McNair; whether the holders of the notes, with whom the compromise was made, were the original vendors of the teas to whom the notes were given. In the absence of any finding of fact on either of these questions of fact, it is hardly safe, and it is certainly difficult, to decide the first and most important question in the case.

If the defendants at the time of the purchase of the teas, did not disclose their principal, the latter was liable to the vendors of the teas, and remained liable when this action was brought, unless he was discharged from such liability by the compromise and surrender of their notes effected by the defendants after their insolvency. (*Waring* v. *Faverick,* 1 *Camp. R.* 85. *Beebee* v. *Robert,* 12 *Wend.* 417. *Kymer et al.* v. *Suwercropp,* 1 *Camp. R.* 100.) If at the time of the purchase of the teas the defendants *did* disclose to the vendors their agency, the notes of the defendants might have been received by the vendors in payment, and if so received, of course the principal never was liable. (*Hyde* v. *Paige,* 9 *Barb.* 150. *Pentz* v. *Stanton,* 10 *Wend.* 275. *Waydell* v. *Luer,* 3 *Denio,* 410.) But if, at the time of the purchase and giving their notes, the defendants did not disclose their agency, I do not see how the defendants' notes could have been received in payment by the vendors, as between the vendors and the principal.

Upon looking into the evidence in the case it is quite apparent, I think, that the vendors of the teas dealt with the defendants as principals, and without any knowledge of, or inquiry or information as to their agency. I think, therefore, McNair the principal, was originally liable to the vendors for the price of the teas.

The question then is, whether McNair was not discharged from his liability by the compromise with the holders of the notes and the surrender of the notes, effected by the defendants subsequently. I think he was, even on the facts found by the referee, general as they are. The inference from these facts is, I think, that the defendants effected the compromise and got up their notes, with money and securities of third parties ; that the holders of the notes received the money and securities in full payment and discharge of them. I do not see why the plaintiff in this action should be permitted to claim that this compromise proceeding was not a discharge as to McNair, of all liability for the price of the teas ; particularly as upon looking into the evidence in the case, it appears that the holders of some if not the largest portion of the notes, with whom the compromise was made, were not the original vendors of the teas. It may be that the original vendors had received the full face of a part if not all the notes.

If the vendors of the teas had retained all the notes, and the compromise was effected with them as holders of the notes, and they received money and securities of third parties, from the defendants, in *payment* and discharge of the notes, the vendors thereby, I think, discharged McNair from all liability, *whether he was known or unknown to them as principal.* (*Story on Agency*, §§ 431, 440.)

The judgment therefore should be reversed and a new trial ordered, on the ground that on the facts proved by him, the referee came to a wrong conclusion on the first and most important question in the case.

Upon the other principal question in the case, whether

the pledging of certain parcels of the teas to Wilmerding & Mount was a wrongful conversion &c., it is not necessary to pass. It is fortunate that it is not necessary ; for the findings of fact by the referee in view of this question, are also exceedingly meagre and defective. He should have found more particularly the facts and circumstances under which the pledge was made ; particularly whether the defendants had any lien, and if any to what extent, on the goods pledged, for commissions or advances, or both.

It is plain from the whole case, that it was tried without a proper appreciation by the counsel or the referee of the importance of certain questions of fact above adverted to.

In my opinion the judgment should be reversed, and a new trial granted, with costs to abide the event of the action.

