## N. Y. SUPERIOR COURT.

CONRAD W. ROSE agt. UNITED STATES TELEGRAPH CO.

An *agent* or *broker* cannot maintain an action against a *telegraph company*, for damages arising from an error or mistake made by the company in transmitting a message from his principal to him, where he acts under the message in the name of and for his principal.

*Heard May General Term,* 1867.

*Before* MONELL, GARVIN *and* JONES, *Justices.*

APPEAL from a judgment.

In August, 1865, Tack Brothers & Co., residing and doing business in the city of Philadelphia, delivered to the defendants, at their office in *that city,* a telegraphic dispatch, addressed to the plaintiff at the city of New York, directing him to contract to sell for them *five hundred* (500) barrels of petroleum, at fifty-one and a half cents a gallon, deliverable from September first to September fifteenth, sellers' option, and requested an immediate reply.

The defendants transmitted the telegram in all respects as it was written, except that, as delivered to the plaintffi, it was written *"five thousand barrels,"* instead of *"five hundred barrels."* On delivery of the telegram, the defendants demanded of and the plaintiff paid to the defendants the sum of seventy-five cents therefor. Within an hour of the receipt of the telegram, and in pursuance of it, the plaintiff made contracts

with different persons to sell and deliver to them five thousand barrels of petroleum, deliverable at the option of the sellers, from September first to September fifteenth, at fifty-one and a half cents a gallon. Thereupon the plaintiff forthwith sent a telegram to Tack Brothers & Co., stating that he had made such contracts, and received a reply that in the dispatch which they had sent they had directed the sale of five *hundred*, and not five *thousand* barrels, and they refused to furnish or deliver any greater number than five *hundred* barrels, and also refused to ratify any of the contracts made by the plaintiff in excess of the number mentioned in their dispatch. After the contracts were made, and before the error in the dispatch was discovered, the price of petroleum advanced one and a half cents a gallon, and on the fifteenth of September had advanced to fifty-eight and a half cents a gallon. The plaintiff *claimed* that he was liable upon his several contracts to the parties concerned, and demanded judgment against the defendants for a sum which should cover such liability, and also his commissions.

On the trial before Mr. Justice JONES and a jury, it was proved that the plaintiff had paid two bills, amounting together to $2,700, for the difference, as expressed in "*oil bought of Messrs. Tack Bros. & Co., of Philadelpaia, August* 26, 1865.

The defendants moved for a nonsuit on several grounds. The motion was denied, and they excepted.

Upon the facts as proved. the court instructed the jury to find a verdict for the plaintiff for the difference between the contract and market price of the petroleum, and also for his commissions, the amounts of which were agreed upon.

The defendants excepted and appealed.

G. P. LOWREY, *for appellants.*
J. E. PARSONS, *for respondent.*

*By the court,* MONELL, Justice. It does not appear that

the contracts made by the plaintiff, for the sale of five thousand barrels of petroleum, were put in evidence on the trial. It, therefore, does not appear in whose name the contracts were made. There is no allegation in the complaint that the plaintiff made the contracts in his own name; and if anything can be inferred from the tenor of the receipts taken on settling the contracts, the sales were made either in the names of Tack Brothers & Co., or their relation as sellers was disclosed to the purchasers.

I am not prepared to say that, irrespective of a liability arising purely on contract, a telegraphic company may not be responsible to a third person for the injurious consequences of an error in transcribing and transmitting a telegraphic message to such third person. If, upon the faith of a message thus communicated, the receiver enters into contracts or makes engagements which result in loss to *himself*, which loss is wholly occasioned by errors in the message as transcribed and sent, and which errors were negligently made by the telegraphic company, it would seem that a liability should attach, not on the ground of a violation of a contract, but of the violation of a duty, the faithful discharge of which the company had undertaken. A mere gratuitous offer to perform a service for another imposes no legal obligation to perform such service; but if performance is undertaken, and it is done negligently, or without due care, so that an injury ensues, an action will lie by the person injured. (*Thorn* agt. *Deas*, 4 *J. R.* 84.) Upon principle, therefore, analogous to the case last cited, *any person* injured by the negligence of a telegraphic company in transmitting a message, although neither a party or privy to any contract with such company, can sustain an action for his damages; for, where "one does a legal act in such a careless and improper "manner that injury to third persons may probably ensue, he "is answerable in some form of action for all the consequences "which may directly and naturally result from his conduct." (*Vandenburgh* agt. *Truax*, 4 *Denio*, 464.)

It is not claimed in this case that the plaintiff was either a party to, or that there was any privity of contract between himself and the defendants. Their contract was with Tack Brothers & Co., and for a breach of such contract they are liable only to the latter, and the right, therefore, to maintain this action by the plaintiff, rests solely upon the principle before stated, of a wrong and an injury; and to bring himself within the principle, he has endeavored to show that, in legal contemplation, he was the injured party.

The case shows that, upon being informed of the contracts to sell *five thousand* barrels, Tack Brothers & Co. refused to ratify such contracts, or to furnish or deliver any greater number than five hundred barrels; upon which the plaintiff, *assuming his liability to the purchasers of the five thousand barrels*, closed the contracts, paying to the purchasers the difference between the market and contract price.

If the plaintiff was correct in such assumpsit of liability, he can doubtless sustain this action.

All the parties to the transaction, immediately connected with the error of the telegraph company, held the relation of principals and agents. Tack Brothers & Co. were the common principals, in Philadelphia, who desired to sell; the defendants were their agents, authorized to transmit their instructions to the plaintiff, who, as their broker, was directed to sell; and nothing in any of the subsequent transactions of the parties changed such relations of principals and agents. The plaintiff, therefore, acting as the broker of Tack Brothers & Co. to negotiate a sale, not having the property in his possession, could not, by making sales in his own name, affect their rights as sellers (*Story on Sales,* § 85); for nothing is better settled than that a principal is entitled to the same rights and remedies against the purchaser, whether the contract be in his name or in the name of his broker (*Story on Sales,* §§ 88, 89); and hence, so far as such rights and remedies go, it is not material whether the sales in this case were made in the plaintiff's name or in the names of the principals, as in either

case they were the contracts of Tack Brothers & Co., and not of the plaintiff, *qui facit per alium, facit per se.* For, says PARSONS (*Pars. on Cont. vol.* 2, 250), a "broker, being one to whom goods are not entrusted, and who usually and properly sells in the name of his principal, and who is understood to be only an agent, *whether he sells in his own name or not,* stands only on the footing of an agent." It does not, however, by any means follow, that an agent who does not disclose his principal is not liable to the person with whom he contracts. If he conceals his character of agent, he then becomes a principal, and individually liable upon his contracts; but the party dealing with him may, when he discovers the principal, charge either, at his election. (*Beebe agt. Robert,* 12 *Wend.* 413.)

But I do not propose to pursue this branch of the subject further; for it does not appear that the plaintiff made the contract in his own name, and it does sufficiently, I think, appear that he disclosed his principals, and thereby relieved himself from personal responsibility.

It is not, then, disputed that the plaintiff was the mere agent of Tack Brothers & Co., and was acting for them and on their behalf. Nor can it be disputed that, having disclosed his principals, they, and not he, were liable upon any contracts which he made in pursuance and within the scope of his agency.

The principals in Philadelphia, in prosecuting their business, and in communicating with their agent in New York, employed the defendants to transmit their message. Upon receipt of the message, the agent, obeying his instructions and disclosing his principals, made contracts for the sale of five thousand barrels of petroleum. Can it be successfully contended that the principals were not liable on such contracts, merely (and there can be no other reason) because the defendants, their agents (*quasi* at least), had negligently transmitted their message, and by a mistake directed a sale of a larger quantity than was intended? I think not. A

vendor is bound by all the acts of his broker done within the limits of his authority (*Story on Sales*, § 90); and it can make no difference whether the authority proceeds directly from the principal, or indirectly through another agent.

Suppose Tack Brothers & Co. had directed one of their clerks to communicate to the plaintiff by letter, to sell *five hundred* barrels, and the clerk had negligently written *five thousand* barrels, and the plaintiff had contracted to sell the latter number, would not such be the contract of and binding upon Tack Brothers & Co.? Clearly it would. Nor is there any difference in the two cases. The authority to the agent, coming through the telegraph company, or through the clerk, so far as the protection of the agent is concerned, is the same. Whatever errors or mistakes were committed by the medium employed by the principals to transmit their instructions to their agent, can in no way, it appears to me, affect either the duty or the rights of such agent literally to obey their injunctions, and to throw all responsibility from himself upon them.

Not only were the contracts made by the plaintiff obligatory upon his principals in Philadelphia, to the full extent of five thousand barrels, but, in like manner, such principals were liable to the plaintiff for his accustomed commissions and expenses (including the seventy-five cents paid for the telegram) in effecting the sale, and which could have been recovered in an action for such purpose. Any payment, therefore, made by the plaintiff, in settlement of the contracts, was voluntary, and was made merely on behalf and for the benefit of Tack Brothers & Co., and does not give any right of action whatever to him against these defendants; his only remedy being, if any, against his principals, to recover for money paid.

In *Wash'g and N. O. Tel. Co.* agt. *Hobson*, in the court of appeals of Virginia (15 *Gratton*, 122), an order to buy five hundred bales of cotton was altered to twenty-five hundred; and in an action by the sender of the message against the

company, it was held, he might recover not only his damages, but also the commissions due to his factor.

We were referred to one case only, in opposition to the views I have here expressed. In that case (*N. Y. and W. Print'g Tel. Co.* agt. *Dryberg*, 35 *Penn.* 298), the order transmitted was, "Send me for Wednesday evening two *hand boquets*," which was transmitted two *hundred* boquets; and it was held, that the *receiver* of the message, having commenced filling the order before the mistake was discovered, could maintain an action. Judge SHARSWOOD, in an opinion delivered below, admitted that, if the company were to be regarded as the agent of the sender, it was clear they were not liable to an action by the receiver. But he did not regard them as such agents, for reasons which to my mind are not very satisfactory. Yet Judge WOODWARD, when the case was up on appeal, said, "that the relation of principal and agent existed between Le Roy (the sender) and the company, there can be no doubt; but I do not think it equally clear that that relation was not established between the plaintiff and the company. Telegraph companies are in some sense public institutions, and I am inclined to think the company ought to be regarded as the common agent of the parties, at either end of the line." But the error in transmitting the message was regarded as a *misfeesanee*, and the company held responsible as a *wrongdoer*. The case is unsupported by authority, and is, it seems to me, opposed by well settled principles applicable to the relations of principal and agent; and I cannot therefore, regard it as more than a mere *dictum* emanating, it is true, from a court entitled to much respect, but not binding upon us here.

The examination I have given this question has led me to the conclusion that, treating the mistake of the company as a *misfeasance*, and extending their liability to every person injured by the wrong, which is the extent to which any of the cases go, the plaintiff in this case was not the injured party; that he was not responsible, individually, upon any of the contracts

he made; that Tack Brothers & Co. were alone liable on such contracts, as also for the plaintiff's commissions and expenses, and that the settlement of such contracts by the plaintiff did not, in contemplation of law, make him the injured party.

I am of opinion the judgment should be reversed and a new trial granted, with costs to abide the event.

I concur, S. W. GARVIN.

I concur, S. JONES.