By the Court* Monell, J.
It does not appear that the contracts made by the plaintiff for the sale of five thousand barrels of petroleum were put in evidence on the trial. It therefore does not appear in whose name the contracts were made. There is no allegation in the complaint that the plaintiff made the contract in his own name, and if anything can be inferred from the tenor of the receipts taken as settling the contracts, the sales were made either in the names of Tack, \Brothers & Co., or their relation as sellers was disclosed to the purchasers.
I am not prepared to say, that irrespective of a liability \ arising purely on contract, a telegraphic company may not be responsible to a third person, for the injurious consequences I of an error in transcribing and transmitting a telegraphic message to such third person. If, upon the faith of a message' thus communicated, the receiver enters into contracts or makesl ' engagements which result in loss to himself, which loss is 11 wholly occasioned by errors in the message, as transcribed and I sent, and which errors were negligently made by the telegraphic company, it would seem that a liability should attach, not on the ground of the violation of a contract, but of the violation of a duty, the faithful discharge of which the company had' undertaken. A mere gratuitous offer to perform a service for another imposes no legal obligation to perform such service; but if performance is undertaken and it is done negligently or without due care, so that an injury ensues, an action will lie, by the person injured. (Thorn v. Deas, 4 Johns. R., 84.) Upon principles, therefore, analogous to the case last cited, any person injured by the negligence of. a telegraphic company in transmitting a message, although neither a party or privy to any contract with such company, can sustain an action for his damages, for when “ one does a legal act in such a careless and improper manner, that injury to third persons may probably ensue, he is answerable in some form of action, for ail the consequences which may directly and naturally result from his conduct.” (Vandenburgh v. Fuax, 4 Den., 464.)
It is not claimed in this case, either that the plaintiff was a *411 party to, or that there was any privity of contract between himself and the defendants. Their contract was with Tack, Brothers & Co., and for a breach of such contract they are liable only to the latter; and the right, therefore, to maintain ' this action by the plaintiff rests solely upon the principle before stated, of a wrong and an injury; and to bring himself within the principle, he has endeavored to show that, in legal contemplation, he was the injured party. The case shows that upon being informed of the contracts to sell five thousand barrels, Tack, Brothers & Co. refused to ratify such contracts or to furnish or deliver any greater number than five hundred barrels; upon which the plaintiff, assuming his liability to the purchasers of the five thousand barrels, closed the contracts, paying to the purchasers the difference between the market and contract price.
If the plaintiff was correct in such assumpsit of liability he can doubtless sustain this action.
All the parties to the transaction immediately connected with the error of the telegraph company, held the relation of principals and agents. Tack, Brothers & Co. were the common principals in Philadelphia, who desired to sell; the defendants' were their agents authorized to transmit them instructions to the plaintiff, who, as their broker, was directed to sell And nothing in any of the subsequent transactions of the parties changed such relation of principal and agent. The plaintiff, therefore, acting as the broker of Tack, Brothers & Co. to negotiate a sale, not having the' property in his possession, could not by making sales in his own name affect them rights as sellers (Story on Sales, § 85), for nothing is better settled than that a principal is entitled to the same rights and remedies against the purchaser, whether the contract be in his name or in the name of his broker. (Story on Sales, § 88, 89.) And hence, so far as such rights and remedies go, it is not immaterial whether the sales in this case were made in the plaintiff’s name, or in the names of his principals, as in either ease they were the contracts of Tack, Brothers & Co. and not of the plaintiff. Qui facit per alium facit per se. For, says Parsons (2 Par. on Con., 250), a “ broker being one to whom goods are not entrusted, and who usually and properly sells in the *412 name of his principal, and who is understood to be only an agent, whether he sells in his own name or not, stands only on the footing of an agent.” It does not, however, by any means follow, that an agent who does not disclose his principal is not liable to the person with whom he contracts. If he conceals his character of agent, he then becomes a principal, and individually liable upon his contracts, but the party dealing with him may, when he discloses the principal, charge either, at his election. (Beebe v. Robert, 12 Wend., 413.) But I do not propose to pursue this branch of the subject further, for it does not appear that the plaintiff made the contract in his own name, and it does sufficiently, I think, appear that he disclosed his principals, and thereby relieved himself from personal responsibility. It is not, then, disputed that the plaintiff was the mere agent of Tack, Brothers & Co. and was acting for them and on their behalf. Nor can it be disputed, that having disclosed his principals, they and not he were liable, upon any contracts which he made in pursuance and within the scope of his agency.
The principals in Philadelphia in prosecuting their business ■ and in communicating with their agent in New York employed the defendants to transmit their message. Upon receipt of the message, the agent, obeying his instructions and disclosing his principals, made contracts for the sale of five thousand barrels of petroleum. Can it be successfully contended that the principals were not liable on such contracts, merely (and there can be no other reason) because the defendants, their (quasi, at least) agents, had negligently transmitted their message, and by a mistake directed a sale of a larger quantity than was intended ? I think not. A vendor is bound by all the acts of his broker done within the limits of his authority (Story on Sales, § 90), and it can make no difference whether the authority proceeds directly from the principal, or indirectly through another agent.
Suppose Tack, Brothers & Co. had directed one of their clerks to communicate to the plaintiff by letter to sell five hundred barrels, and the clerk had negligently written five thousand barrels, and the plaintiff had contracted to sell the latter number, would not such be the contract of and binding *413 upon Tack, Brothers & Go. ? Clearly it would. Nor is there any difference in the two cases. The authority to the agent coming through the telegraph company or through the clerk, so far as the protection of the agent is concerned, is the same. Whatever errors or mistakes were committed by the medium employed by the principals to transmit their instructions to their agent, can in no way, it appears to me, affect either the duty or the right of such agent literally to obey their injunctions, and to throw all responsibility from himself upon, them.
Not only were the contracts made by the plaintiff obligatory upon his principals in Philadelphia, to the full extent of five thousand barrels, but in like manner, such principals were liable to the plaintiff for his accustomed commissions and expenses (including the seventy-five cents for the telegram), in effecting the sale, and which could have been recovered in an action for such purpose. Any payment therefore made by the plaintiff in settlement of the contracts was voluntary, and was made merely on behalf and for the benefit of Tack, Brothers & Co., and does not give any right of action whatever to him against these defendants. His only remedy being, if any, against his principals to recover for money paid.
In Wash. & New Orleans Tel. Co. v. Hobson, in the Court of Appeals in Virginia (15 Gratt., 122), an order to buy five hundred bales of cotton was altered to twenty-five hundred; and in an action by the sender of the message against the company it was held he might recover not-only his damages but also the commissions due to his factor.
We were referred to one case only in opposition to the views 1 nave here expressed. In that case (N. Y. & W. Printing Tel. Co. v. Dryburg (35 Penn., 298), the order transmitted was: “ Send me, for Monday evening, two hand bouquetswhich was transmitted, two hundred bouquets; and it was held, that the receiver of the message, having commenced filling the order before the mistake was discovered, could maintain an action. Judge Shabswood, in an opinion delivered below, admitted, that if the company were to be regarded as the agent of the sender, it was clear they were not liable to an action by the receiver. But he did not regard them as such agents for reasons which,, to my mind, are not very satisfactory. Yet *414 Judge Woodwabd, when the case was up on appeal, said : “that the relation of principal and agent existed between Le Boy, the sender, and the company, there can be no doubt; but I do not think it equally clear that that relation was not established between the plaintiff and the company. Telegraph companies are in some sense public institutions; and I am inclined , to think the company ought to be regarded as the common agent of the parties at either end of the line.” But the error in transmitting the message was regarded as a misfeasance, and the company held responsible as a wrong doer. The case is unsupported by authority, and is, it seems to me, opposed by well settled principles applicable to the relations of principal and agent; and I cannot therefore regard it as more than a mere dictum, emanating, it is true, from a court entitled to much respect, but not binding upon us here.
The examination I have given this question has led me to the conclusion, that treating the mistake of the company as a misfeasance, and extending their liability to every person injured by the wrong, which is the extent to which any of the cases go, the plaintiff in this case was not the injured party; that he was not responsible, individually, upon any of the contracts he made; that Tack, Brothers & Co. were alone hable on such contracts, as also for the" plaintiff’s commission and expenses, and that the settlement of such contracts by the plaintiff, did not, in contemplation of law, make him the injured party.
I am of opinion the judgment should be reversed and a new trial granted with costs, to abide the event.
Order accordingly.