## THE MARYLAND COAL COMPANY, APPELLANT, *v.* HENRY EDWARDS, RESPONDENT.

*Sale of property — credit given to agent — when principal discharged by.*

Where property is sold to an agent who, at the time, discloses the name of his principal, and states that the goods may be charged to him or to his principal, and the vendor, not knowing the principal, charges the goods to the agent, it is a question for the jury whether or not such exclusive credit is given to the agent as to discharge the principal.

APPEAL from a judgment in favor of the defendant, entered upon an order of the court at Circuit dismissing the complaint.

*Elliott F. Shepard*, for the appellant. Buying in their own name did not discharge their principal, but only added the personal obligation of the agents. (Pothier Traité des Oblig., No. 82 ; *Hopkins* v. *Laconture*, 4 La., 64 ; *Thomson* v. *Davenport*, 9 Barn. & Cress., 78 ; 1 Bell's Comm. Mer. Jur., § 418 ; *Wyatt* v. *Marquis of Hertford*, 3 East, 147 ; *Taintor* v. *Pendergast*, 3 Hill, 72.) Plaintiff had made no election to credit the agents, and not the principal. (Story's Agency, §§ 288, 289 ; *McGraw* v. *Godfrey* [Gen. Term Com. Pleas], 14 Abb. [N. S.], 397 ; *Curtis* v. *Williamson*, L. R. [10 Q. B.], 57 ; *Rathbone* v. *Tucker*, 15 Wend., 498 ; affirmed, 18 id., 175 ; *Muldon* v. *Whitlock*, 1 Cow., 290 ; *Porter* v. *Talcott*, id., 359.)

*A. Prentice*, for the respondent.

DAVIS, P. J. :

This action was brought to recover the price of 100 tons of coal, alleged to have been sold by the plaintiff to the defendant. The defendant resided at Canajoharie. His sons were in business in New York, as produce dealers, under the firm name of J. H. & J. T. Edwards. Under date of September 28, 1871, the defendant wrote to his sons as follows :

" DEAR SONS.— I hear this morning that the boat Andrew Farrell went by here yesterday for Buffalo, and did not bring the Cumberland coal ; therefore, you will have to get another boat and send

100 gross tons of Cumberland coal; I must have the coal, certain. Don't fail to attend to it; and also throw in for 300 tons stove coal for next month.    Get best kind of coal for me, well screened.

" Yours, etc.,

" HENRY EDWARDS."

J. H. & J. T. Edwards were not dealers in coal. This letter must, therefore, have been understood by them as an order to purchase the coal and procure a boat by which to ship it to defendant at Canajoharie, and for those purposes they were doubtless agents for the defendant. In October following, J. H. Edwards went to the salesman of the plaintiff in New York, and purchased the coal. He told the salesman he bought it for his father, " a party up the river," and gave him " the privilege to charge it to whichever party he saw fit." The salesman says that not knowing his father, he took a reference as to the firm of J. H. & J. T. Edwards, which proving satisfactory, he charged the coal to them. A bill of the coal was made out to J. H. & J. T. Edwards for the amount, and an order for the delivery of the coal was given. The terms of the sale were cash in thirty days.

J. H. & J. T. Edwards procured a boat to which the coal was delivered at Hoboken. It was carried thence to Canajoharie and delivered to defendant, who was a merchant and dealer in coal at that place. The salesman further testified that he sold the coal to J. H. & J. T. Edwards, and gave the credit to them ; that he made the entry charging the coal to them, as a matter of convenience, because J. H. Edwards allowed him to charge it to either party, and they were in the city ; that he " looked to them to be responsible, for he looked to them for pay." Evidence was also given, showing the delivery of the coal to the defendant, who paid the freight, and that afterward the defendant said that he did not know whom he would have to pay for it; that he had given the money to his sons to pay for it, and it appeared that they failed and did not pay for it, and they were trying to get it out of him again.

Other evidence was given, tending to show that the sale was made and the credit given to J. H. & J. T. Edwards. On the close of the plaintiff's evidence, the defendant's counsel moved for a dismissal of the complaint, on the ground that there was no

evidence showing that the defendant ever purchased any coal of plaintiff. The court granted the motion, and plaintiff duly excepted.

The evidence in the case certainly tended to show that J. H. & J. T. Edwards were authorized to purchase the coal for defendant as his agents, and that they so far disclosed the agency to plaintiff as to say that the coal was bought for their father, a party up the river, and that it might be charged to him or to them, at the election of plaintiff. It is quite clear also, that the coal was charged to them, and the credit given to them; but the witness qualifies this by stating also, that this was done as matter of convenience, the firm residing in the city. The fact of the agency was thus disclosed, and the principal was indicated, and the option given to make the charge to either.

The true question in the case was, as it seems to us, whether, under the circumstances, the credit for the coal was given exclusively to the agents. This was a question of fact for the jury to determine under proper instructions from the court, and notwithstanding the evidence tended to show quite strongly that the credit was so given, it seems under all the circumstances to have been a proper case for the consideration of the jury. " Where the principal is disclosed at the time of the purchase, it then becomes a question of fact to be determined from all the circumstances of the case, whether the vendor relied exclusively upon the credit of the agent or not. If he did, he cannot afterward resort to the principal." *

In the case in 10 Wendell, † the word " agent " was used in the bill of goods, and in the draft given on their purchase by the agent. This was all the disclosure made of the principal. The court held that it was a question for the jury to decide, whether the goods were sold exclusively upon the credit of the agent and of the bill or not.

In *Rathbone* v. *Tucker*, ‡ the agent gave his own note for the pur-

* Beebee v. Robert, 12 Wend., 413, per SUTHERLAND, J., page 417; 15 East, 62; 4 Taunt., 574; Pentz v. Stanton, 10 Wend., 271, 278; Bently v. Griffin, 5 Taunt., 356; 1 Com. L. R., 131; Legget v. Reed, 1 Carr. & Payne, 16; 12 E. C. L., 301.

† *Ubi supra.*

‡ 15 Wend., 498; afterward affirmed by the Court of Errors; see 18 id., 175.

chase, and it was held that the principal was still holden on failure of the agent to pay the note at maturity, unless it appeared affirmatively that he had sustained injury by the creditor thus dealing with the agent. The statement to plaintiff's salesman, that the coal was bought for the father of J. H. Edwards, was a disclosure of the principal. It indicated clearly who the principal was, and gave every opportunity of inquiry necessary to ascertain his full name, credit and residence. The case does not, therefore, come strictly within the authorities touching undisclosed principals. It stands upon the question whether exclusive credit was given to the agents. Of course in such a case, the sale is, legally speaking, made to the agents, and the seller is entitled to no recourse against the principal. If the jury had found that the credit was so given, the verdict could not under the evidence have been disturbed; nor do we think that a verdict the other way would have been so clearly unsupported that the court would have been bound to set it aside.

A new trial should therefore be granted, with costs to abide the event.

DANIELS and BRADY, JJ., concurred.

Judgment reversed and new trial granted, costs to abide event.