WILLIAM BAILEY, PRESIDENT OF THE STATE BANK OF FLORIDA, APPELLANT, VS. THE SOUTH WESTERN RAILROAD BANK.

1. The drawee of a draft owes no duty to the holder until he has accepted the draft; neither can the holder resort to the drawer until after he has used due diligence to obtain payment from the drawee.

2. When the drawer and the drawee are the same in contemplation of law, the rule applicable to such draft is, that in legal operation it is regarded as a promissory note, payable on demand, and the maker thereof is not entitled to notice.

3. It is not necessary to prove a demand; the commencement of the suit is sufficient, if within the statute of limitations.

Appeal from Leon Circuit Court.
This case was decided at Tallahassee.

DOUGLAS, J., being disqualified to sit in this case, having been of Counsel therein in the Court below, the Hon. THOS. T. LONG, Judge of the Suwannee Circuit, sat in his place.

A full statement of the case is contained in the opinion of the Court.

*Papy & Westcott* for Appellant.

This is an action of assumpsit, brought by the State Bank of Florida against the South Western Railroad Bank, upon a draft drawn by the Agent of the South Western Railroad, in the following words:

AGENCY OF THE SOUTH WESTERN R. R. BANK, }
    TALLAHASSEE, May 6th, 1862. }

*No.* 482.

Cashier of the South Western Railroad Bank, Charleston, pay to the order of H. L. Hart, eight hundred and fifty currency dollars, ($850).

Signed,                          J. H. BULL, Agent.

Endorsed H. L. Hart, P. B. Brokaw.

The draft is in the hands of the State Bank of Florida as endorsee of P. B. Brokaw. The suit is instituted against the South Western Railroad Bank, as the *drawer* of the check, by the State Bank, the *endorsee.*

1st. We maintain that the act of the agent, Bull, within his powers, is the act of the principal, the Bank; and that the drawer and drawee to this draft are identical in contemplation of law; that it is, in contemplation of law, a draft drawn by the South Western Railroad Bank on the South Western Railroad Bank.

The acts of agents of natural persons, within their powers, are the acts of their principals, although, in point of fact, there is a distinct personalty and being. Yaggert vs. Stanbury, 2 McLane, 543; Peters vs. Farnsworth, 15 Vmt., 155; North River Bank vs. Rogers, 22 Wend., 649; 1st Storys Contracts, 134.

Notice to the agent is notice to the principal. 5 Florida, 409.

A promissory note drawn by an agent may be declared on as drawn by the principal, so perfect is the legal identity

of the two.    Hays vs. Haseltine, 2 Compton, 450; 2 Lord Raymond, 1542; 10th Wendell, 275.

If, then, acts of agents of natural persons, where there is, in point of fact, a want of personal identity, are in contemplation of law the acts of their principals, certainly there is an indentity of drawer and drawee to this bill, where it is a draft drawn by a corporation having no actual being or existence except through agents and natural persons.

Having established the identity of drawer and drawee of this bill, the rule applicable to instruments of this character must be applied, which is, that the responsibility of the drawer of this draft is that of a maker of a promissory note, entitled to no notice of dishonor, and no demand beyond that set up in the declaration and the demand made by this suit.    1st Mann & Ryland, 120; Chitty on Bills, 354; Roscoe on Bills, pages 20 and 43.

The responsibility being that of a maker of a promissory note, the question is, whether, if this was a note of the South Western Railroad Bank, payable at Charleston on demand, any earlier demand was necessary.

Say the Court, in third Wendell, page 21, case of Haseltine vs. Bishop: "In an action on a note, *payable at a particular place and day*, it is not necessary to aver or prove a demand at the time and place, but the readiness of the defendant is matter of defence;" and that it is well settled, "that in an action on a note payable on *demand generally*," (which is this case,) "no demand need be proved the commencement of the suit is a demand."

The court further says, "that in England and America the remedy upon bank notes is the same as upon promissory notes of individuals."    If this be a correct view of the question, a holder of a bank note, previous to suit, need not make a demand of a note payable on demand at the Bank, but if the Bank is solvent, a defence will be made out which will subject the plaintiff to costs.

Bailey vs. The South Western R. R. Bank—Argument of Counsel.

Plaintiff cannot in this case be subjected even to costs, because the instrument which was, in contemplation of law a promissory note, payable at sight or on demand generally, and not upon a particular date, and demand was made on the 17th day of Sept., A. D. 1866, at the point at which payment was to be demanded, the City of Charleston.

As to when payment of notes payable on demand should be demanded, see further, Story on Pomissory Notes, page 36, par. 29, and citations there referred to.

It must be borne in mind that we are not in the situation of an endorsee of a note, seeking to bind the endorser of a promissory note; nor are we in the situation of the payee of a bill of exchange, seeking to bind the drawer of the bill upon failure to present for acceptance or payment, within reasonable time, in a case where drawer and drawee are different persons. In this case the legal identity simply combines the responsibilities of the drawer and drawee in one and the same person, and this combination of responsibilities and relations results in the responsibility and relation of the maker of a promissory note to an endorsee, the limit to whose action is nothing except the common limit to all actions—the statute of limitations.

The general rule, as laid down in Murray vs. Judah, 6 Cowen, 490, is that a check is not due from the drawer until payment had been demanded from the drawee and refused by him, but, that as between the *holder* and the *drawer*, a demand at any time before suit is brought is sufficient. 6 Cowen, 490; 13 Wendell, 552; see also Cruger vs. Armstrong, 3d John. case, 5; Conway vs. Warren, 3d John., 250.

This, however, is not a question in this case, as the rule, even if, as contended for by appellees, does not apply to cases of identity, which we understand the appellee admits in this case.

The drawer of this draft got the consideration and used it, and it should be made to pay it, unless the law is clearly against us.

"There is no doubt that a person may draw, accept or endorse a bill by his agent, and it will be as obligatory upon him as though it were done by his own hand." 10th Wendell, 275.

*D. P. Hogue* for Appellee.

In this case the record shows that the check upon which the suit is brought in the court below, was drawn by J. Bull, agent of the South Western Railroad Bank, on the 6th day of May, 1862, and that it was presented to the Bank and payment demanded on the 17th day of September, 1866, more than *four* years after the making of the check by the agent.

The record further shows, that the check was paid for in Confederate money, and that it was to be paid and discharged by the Bank at Charleston on presentation, in the like funds, which was at that time the currency of the country. It also shows that Bull, the agent of the Bank, had, before the check was presented to the Bank and payment demanded, ceased to be its agent, and that he had had a full settlement with the Bank of his transactions as its agent, and a settlement of his accounts as such. These are all the material facts set out in the record.

The defendant in the court below, who is the appellee in this court, pleaded, 1st, the general issue, and secondly, two special pleas of *laches* on the part of the plaintiff in not presenting the check within a reasonable time to the Bank at Charleston and demanding payment of the same.

The question now presented for the consideration of this court is, has the plaintiff in the court below entitled itself to recover from the defendant, or has it lost its remedy by *laches?*

It is insisted, on behalf of the defendant, who is the drawee,

1st. That the *drawee* owes no duty to the holder until after the bill or check is accepted. 2 Selden's Rep., 412; 21 Wend. Rep., 373. In the case of Bellamy vs. Majoribank, 8 Eng. Law and Equity Rep., 523, Parke, Baron, remarked, "that the holder could not sue the drawee unless he had accepted the check." In 6th Cowen's Rep., 484, and in 3 John. cases, 5 and 260, it was held that a demand of payment of a check must be made of the *drawee* before the holder could sue the *drawer*.

2d. That as the *drawee* of a check owes no duty to the holder until he has accepted, so neither can the holder resort to the *drawer* until after he has used due diligence to obtain payment from the *drawee*. Merchants' Bank vs. Spicer, 6 Wend. Rep., 445.

A check drawn on a Bank is a bill of exchange, payable on demand. Edwards on Bills of Exchange, 396. The same principles are applied to checks as are applicable to an ordinary draft or bill of exchange, and the courts hold *distinctly* that the *drawee* owes no duty to the holder until after the check or bill is accepted. Chapman vs. White, 2 Selden's Reports, 412; Harker vs. Anderson, 21 Wend. Rep., 373; 2 Hill's Rep., 425.

In the case of the Merchants' Bank vs. Spicer, 6 Wend. Rep., 445, Mr. Justice Marcy, in delivering the opinion of the court, says, " checks are considered as having the character of inland bills of exchange, and the holder thereof, if he would preserve his right to resort to the drawer or endorser, must use the same diligence in presenting them for payment, and in giving notice of the default of the *drawee* that would be required of him as the holder of an inland bill of exchange."

In the case of Cruger vs. Armstrong, 3 John. cases, 5, it

was decided that the holder of a check was bound to demand payment of the *drawee* before he could resort to the *drawer*, and in that case Judge Kent observed, "I consider it a settled rule that a check must be presented for payment in a reasonable time."

In the case of the Mohawk Bank vs. Broderick, 13 Wend. Rep., 133, Chancellor Walworth says, "the true rule, both as to checks and bills of exchange, undoubtedly is, that the holder must use reasonable diligence, according to the ordinary course of business in other cases of a like nature ; and that is, such reasonable diligence must, in some measure, depend upon the particular circumstances of each case." See also on this subject, Story on promissory notes, sections 493, 494, 496, 497.

We have thus seen from the authorities,

First. That the *drawee* of a check is not bound to pay it, or owes any duty to the holder, until he has accepted or undertaken to pay.

Second. That the *drawer* of a check or bill of exchange is not bound to the holder unless the holder has used due diligence to collect it from the *drawee.*

Third. That due diligence means *a reasonable time*, dependent upon the usage and custom of merchants and the circumstances of each particular case. Mulman vs. D'Eguino, 2 Hen. Breck., 565, 570 ; Way vs. Hill, 7 Taunt., 397 ; Heylyn vs. Adamson, 2 Bun., 676 ; Saunders on Plead. and Evidence, 290.

It will be seen from the authorities hereinbefore cited, that the courts hold that the holder of a check must use due diligence in presenting it to the *drawee* for payment, and in the event of refusal, in order to bind the *drawer*, he must give notice of the non-payment by the *drawee.* This seems to be the general ruling of the courts, and is most consistent with mercantile usage. There are some reptored cases, however, in which the courts have modified the rule, and have

held that where the holder of the check shows *affirmatively and clearly* that no injury resulted to the drawer by the delay, that a less degree of diligence would be required. The general rule laid down in these cases is, that the holder is not permitted to lock the check up in his drawer or safe for an unreasonable time, and that injury to the *drawer* of a check will be *presumed* where the check is not presented within a reasonable time, and notice of non-payment and non-acceptance given ; and the holder must, in order to excuse his *laches, show affirmatively and clearly* that no injury or damage has been occasioned by the delay.

In the case of Little vs. Phœnix Bank, 2 Hill's Rep., 427, Nelson, Chief Justice, in delivering the opinion of the court, says, " the only doubt on this subject has been whether, if it be clear that no loss has resulted to the drawer, he can claim to be discharged on the ground of *laches* alone.   Conflicting opinions have been expressed on this point in this court by different Judges, and the question may still be considered an open one, though I think it has been assumed in this State, since the case of Cruger and Armstrong, 3 John. cases, 5, and Conroy vs. Warren, 3 John. cases, 259, that the plaintiff must *show clearly and affirmatively* that the defendant has sustained no loss by the delay in presenting the check.   In the first of these cases (Cruger vs. Armstrong) it was held that a demand on the *drawee* should have been shown, and that no liability accrued until after demand." The suit was brought four years (as in this case) after the making of the check, the plaintiff was non-suited in the court below, and the judgment affirmed in the Supreme Court.

In the case of Conroy vs. Warren, 3 John. cases, 259, the check bore date the 28th March, and was not presented for payment until seven months afterwards.   Thompson, Judge, was of opinion that it was *incumbent* on the plaintiff, under

these circumstances, to show *affirmatively* that the defendant had sustained no damage by the delay.

Thus it will be seen, that in Harker vs. Anderson, 21 Wend. Rep., 372, the Supreme Court of New York held, that a check should be presented and payment demanded within a reasonable time, as well to charge the *drawer* as endorser ; and Mr. Justice Cowen, in the case of Little vs. Phœnix Bank, 2 Hill's Rep., 432, affirms the doctrine in Harker vs. Armstrong, and says, "there are no adjudications to the contrary."

The utmost length to which any court has gone in opposition to the ruling in Harker vs. Anderson is to declare, that in suits upon a check, where due diligence has not been used, the plaintiff, to avoid the plea of *laches* for not presenting the check to the *drawee* and demanding payment within a reasonable time, must show *clearly and affirmatively* that the defendant has sustained no damage by the delay. Injury and damage is *presumed* by the delay, and this *presumption* must be overcome by *affirmative* proof on the part of the plaintiff.

In the case now before the court the plaintiff has made no such proof, nor could he have done so. The case stands upon the record showing a *laches of four years and four months*. The record shows that the check was made in May, 1862, and was not presented to the *drawee* for payment until September, 1866 ; that it was paid for by the payee in Confederate money, and was to have been discharged on presentation to the Bank in Charleston in the like funds ; that the agent who drew the check on the Bank, long before the check was presented for payment to the Bank at Charleston, had settled his accounts with the Bank, as its agent, and his agency had ceased.

The court will take judicial notice of the time when the Confederate government ceased to exist as a government, and when its currency became valueless, and the court will

also presume that a banking institution, like that of the South Western Railroad Bank, (in the absence of proof to the contrary,) had funds on hand to pay and discharge the check, if presented at any time before the Confederate government ceased to exist, and would have paid it if presented within a reasonable time.

It was contended by the plaintiff in the court below that the Bank knew from the returns and statements of its agent that the check had been drawn on it by its agent. If this be true, then the legal presumption is, that the Bank kept on hand Confederate money to meet the check when it should be presented for payment, and that it had this money on hand at the time it became of no value, and was a total loss to the Bank.

These facts show that if the plaintiff should recover in this suit, the defendant will sustain a serious loss by the *laches* of the plaintiff.

In the case of Little vs. Phœnix Bank, the court, after noticing the distinction made in the reported cases between *laches alone* and *laches followed by loss to the drawer*, say, " returning now to the particular case before us, and conceding the full benefit of the last distinction in favor of the holder of checks, it is most obvious that the plaintiffs have not brought themselves within it. If the paper had been presented at any time short of a few days before the demand was actually made upon the Bank at Vicksburg, it would have been paid in the current funds of the place. The large check was made payable expressly in these, and even if specie had been required upon the other and notice of refusal to pay given, the defendants could have taken it up and saved themselves by receiving the current funds which were at all times paid by the drawers upon drafts or checks drawn by the Phœnix Bank down to the time of the final suspension of the Bank."

The striking analogy between that case and the one now

before the court cannot fail to attract attention, and we say with the Judge who pronounced the opinion that, conceding to the plaintiff the full benefit of the distinction between *laches alone* and *laches accompanied by loss*, it is most obvious that he has not brought himself within it. That if the check had been presented at any time short of the breaking down of the Confederate government, it would have been paid in the current funds of the country, to-wit, Confederate money, and the evidence shows it was to have been paid in that currency.

The defendant in the court below, if the plaintiff had attempted to prove that no loss had been sustained by reason of his *laches*, could and would have offered abundant proof to the contrary.

The plaintiff failed to make the affirmative proof required by law, and his *laches* is conclusive against him.

It was urged in the argument of this case in the court below that the *drawer* and *drawee* were the same parties, and therefore there was no obligation on the holder of the check to make demand on the *drawee* for payment, and to give notice to the drawer of its non-payment and dishonor; that the act of the agent was the act of the principal, and that the check was drawn by the South Western Railroad Bank upon itself. As this was the point chiefly relied upon on the trial in the court below, it is presumed it will be repeated in this court.

It is unnecessary to resort to any other authority to controvert and overthrow this position than the adjudication by this court in the case of Pitts vs. Jones, 9 Fla. Rep., 519, which is believed to be decisive of this case.

In that case, Pitts, the agent of Pearce & Son, purchased as agent pine saw logs for his principals, which he was authorized to do, and for the payment of these logs drew a draft at sight on Pearce & Son in favor of Jones, the vendor, for $168.32-100, which draft Pearce & Son, the principals,

Bailey vs. The South Western R. R. Bank—Argument of Counsel.

refused to accept, and no notice was given to Pitts, the agent, of the non-acceptance by Pearce & Son, the principals. Jones afterwards brought suit against Pitts, the agent, to recover the amount of the draft which he had drawn upon his principals.

Mr. Justice Walker, in delivering the opinion of the court, says : " Although the *drawer* had no funds in the hands of the *drawee*, yet if he had a right to expect to have funds in the hands of the drawee to meet the bill, or if he has a right to expect the bill to be accepted by the drawee, in consequence of any arrangement or agreement with him, or if, upon taking up the bill, he would be entitled to sue the drawee or any other party on the bill, then, in every such case, he is entitled to strict notice of the dishonor of the bill, (and cites Story on Bills, 311.) If we ask (says the Judge) the question whether the drawer in this case did not have a right to expect the bill to be accepted and paid by the drawee in consequence of an agreement or arrangement with him, or if, upon taking up the bill, he would have been entitled to sue the drawee, we can have no hesitancy in answering in the affirmative. The evidence shows he purchased the saw logs, for which the draft was given, only as the agent of Pearce & Son, and had in his own right no interest in the matter. It is indeed difficult to conceive of any class of persons more strictly entitled to notice than those acting as agents, even if they have no funds in the hands of the drawee, their principal."

In the case now before the court, the record shows that Bull drew the check as agent of the South Western Railroad Bank, and had, in his own right, no interest in the matter ; that from his position as agent he had a right to expect the check to be accepted and paid by the drawee, (the Bank,) in consequence of an agreement or arrangement with it, and from the very nature of his agency.

The error of the appellant is in supposing the agent and

principal to be one and the same person. If this is so, then there can be no such thing as an agent, and no agent could protect himself against the acts of his principal.

In the present case, it cannot be doubted that if the check had been duly presented and payment refused, that the holder could have given notice to Bull, the agent, and have sued him for the amount of the check, and that Bull in turn might have sued the drawee, upon his taking it up and discharging the check.

It is believed that the case of Pitts vs. Jones is directly in point, and conclusive of the case at bar.

BAKER, J., delivered the opinion of the court.

This suit was commenced by attachment, issued from the Circuit Court of Leon county, in favor of William Bailey, President of the State Bank of Florida, against the South Western Railroad Bank, upon a draft drawn by James H. Bull, Agent of the South Western Railroad Bank, and set forth in plaintiff's declaration, as follows:

AGENCY OF THE SOUTH WESTERN R. R. BANK, }
        TALLAHASSEE, May 6th, 1862.          }

*No.* 482.

Cashier of the South Western Railroad Bank, Charleston, pay to the order of H. L. Hart, eight hundred and fifty currency dollars, ($850).

Signed,                         J. H. BULL, Agent.

Endorsed H. L. Hart, P. B. Brokaw.

The plaintiff, as holder and endorser of said draft, on the 17th day of September, 1866, caused the same to be presented at the Bank, in Charleston, for payment, which was refused, and the draft regularly protested. This suit is instituted against the Bank as drawer and not as drawee of the bill.

It is charged in the declaration that the defendant, by its

agent J. H. Bull, made its certain bill of exchange, and directed the said bill of exchange to the cashier of the South Western Railroad Bank, being the same Bank of which the said J. H. Bull was agent.

The defendant appears by counsel, takes no exception to the manner of commencing the suit, or to the plaintiff's declaration, and for defence, files following pleas: 1st. General issue. 2d. Two special pleas setting forth laches on the part of the plaintiff in not presenting the check for payment within a reasonable time.

An agreement of counsel was also filed to the effect that the bank agent, having received Confederate Notes for said draft, the party in whose favor it was drawn was to receive like funds in payment.

The court, upon consideration of the case, rendered a judgment for the defendant, from which judgment the plaintiff appealed to this court.

The plaintiff's counsel filed the following assignment of errors, to-wit:

1st. The court erred in holding upon the case submitted, that a demand by the holder upon the drawee, at the place at which the draft was payable anterior to the 13th day of September, 1866, was necessary to bind the defendant as drawer.

2d. That the court erred in holding that demand of payment of the draft in suit at an earlier day was necessary to entitle plaintiff to recover.

3d. That the court erred in giving judgment for the defendant.

The only point presented by the assignment of errors is, whether the plaintiff was barred from recovery in this suit on account of the delay in making a demand on the drawee and giving notice of non-payment.

It is urged by the counsel for the defendant that the

drawee owes no duty to the holder until he accepts the draft; neither can the holder resort to the drawer until he has used due diligence to obtain payment from the drawee. As a general proposition of law, there can be no doubt of the correctness of this position, nor of the weight of the numerous authorities quoted in its support, when applied to the ordinary cases arising under the law regulating demand and notice.

There being no difference of opinion in relation to these general principles, they need not be discussed here.

We are only required to determine how far they apply to this particular case, and whether there was anything in the relations existing at the date of this draft, between the drawer and drawee, that would relieve the holder from the binding obligations of these well-settled rules of law.

If a suit had been brought against the agent Bull as drawer of this bill, the plea of *laches* would have been a good defence. He certainly would have been entitled to notice, to enable him to protect himself from loss while he was in possession of the funds of the bank. The case of Pitts vs. Jones, 9 Florida Reports, so forcibly urged by the counsel for appellee, would be conclusive authority to sustain his defence, though it does not seem applicable to the case before us.

The plaintiff, however, sets up no claim against the agent, and relies upon the suit against the bank as drawer of the draft. The record shows that J. H. Bull was the authorized agent of the South Western Railroad Bank, doing business in Tallahassee; that in the regular discharge of his duties as such, he made this draft, and signed it as agent; and it is not denied that the act was at the time as binding as if it had been the act of the principal. An individual may draw a bill of exchange by an agent, and it will be as binding upon him as if drawn by his own hand. 10 Wendell, 275.

And it is now a firmly established rule of law, that cor-

Bailey vs. The South Western R. R. Bank—Opinion of Court.

porations may bind themselves as drawers, endorsers or acceptors of bills of exchange through the instrumentality of agents, or become parties to any other negotiable paper, if within the proper scope of the objects and purposes of their charter. Story on Bills, § 79.

The agent who made this draft was clearly using the appropriate means to accomplish the objects and purposes for which the bank was chartered, and for which the agency was established at Tallahassee. The draft seems to have been properly signed, and was drawn within the scope of the agent's authority on the cashier of the Bank at Charleston. The consideration for which it was given was paid to the agent, and went to the credit and use of the bank. Neither the agent nor the cashier appears to have any interest in the matter, except in the honest discharge of the trust confided in them; both representing one party and one common interest.

Notice is generally required, so that all parties to the bill of exchange may have time to protect their interests and prevent loss. Mr. Chitty says: "The reason why the law in general requires the holder to give due notice of non-acceptance by the drawee is, that the drawer may forthwith withdraw from the possession of the drawee such effects as he may already have, or may stop those which he is in course of receiving, and that the drawer and endorsers may respectively take the necessary measures to obtain payment from the parties respectively liable to them." Chitty on Bills, 355.

In all cases where the spirit and reason of this law applies, it must be strictly complied with. In this case, however, it is claimed that the drawer and drawee are the same; if so, the application of the law would involve on absurdity. It cannot be supposed that the agency at Tallahassee would be liable to suffer loss on account of the misapplication of its

funds by the bank, or that the agency could withdraw funds from the bank, or "stop any it might be in course of receiving."

In absence of all authority upon this question, we would have little difficulty in arriving at a satisfactory conclusion upon the application of general principles; but we are not without authority to sustain our position. It has frequently been decided that notice is not necessary even in cases where the drawer and drawee are not identical, but where they stand in some business relations towards each other that raises the presumption of notice. "Where a bill is drawn by several persons upon one of themselves, since the acceptor is likewise the drawer, notice of dishonor is superfluous, as dishonor must be known to one of them, and the knowledge of one is the knowledge of all." Byles on Bills, 366.

In the Supreme Court of the State of New York, it has been held that if the drawer of a bill be a partner in a firm on which the bill is drawn, the holder need not give notice of the dishonor by non-acceptance of the bill by the firm, for as the firm must have notice thereof, that is notice to himself. 20 John., 176.

Even where there is no interest in common between the drawer and drawee, when the drawer makes a bill payable at his own house, notice of dishonor is unnecessary. Byles on Bills, 364.

The rule of law given in the cases above stated applies with greater force to the case now under consideration.

The drawer and drawee being one, the responsibility cannot be divided.

The bank received the consideration, and its draft in the hands of the holder is simply an evidence of indebtedness.

In legal contemplation, such draft is regarded as a promissory note, payable on demand, and the maker thereof not entitled to notice. 1st Manning & Ryland, 120; Roscoe on Bills, 20, 40.

Bailey vs. The South Western R. R. Bank—Dissenting Opinion.

The law in all cases of this sort deems the draft to admit a present debt to be due to the payee or holder, and payable absolutely, and at all events, whenever presented for payment according, to its purport, and no other demand need be made, except by bringing suit thereon.    Story on Promissory Notes, § 29.

The agreement filed by counsel in this case shows, that the consideration given for the draft was Confederate Treasury Notes.    The assessment of damages should, therefore, be made in accordance with the provisions of the ordinance of the Convention, adopted Nov. 7, 1865.

It is ordered that the judgment be reversed, and the cause remanded for new trial.

Dissenting opinion of Hon. THOS. T. LONG, Judge of the Suwannee Circuit of Florida, setting in the place of DOUGLAS, J.

Since the investigation of this cause, at the time the decision was rendered, I have tried to persuade myself that the decision of a majority of the court was correct; but, being unable to do so, I am constrained to carry out the convictions of my mind, made known to the court at that time.

The record discloses the fact, that the check upon which the suit was brought in the court below was drawn by J. H. Bull, Agent of the South Western R. R. Bank, on the 6th day of March, 1862; and that it was presented to the bank and payment demanded on the 17th day of September, 1866, four years and four months after it was drawn.

It is also made known to the court that the check was paid for in Confederate money, the existing currency of this State at that time, and that it was to be paid by the bank at Charleston in the like funds.    It is also shown to the court that Bull, the agent of the bank, had, previous to the presentation of the check to the bank and payment de-

manded, ceased to be the agent of the bank, and had, as such agent, a full settlement with the bank. These seem to be the material facts set out in the record.

The defendant in the court below pleaded: 1st, The general issue, and, 2d, Special pleas of laches on the part of plaintiff in not presenting the check for acceptance and payment in a reasonable time to the bank at Charleston.

It is contended in this cause that the drawer and drawee were the same parties, and that there were no obligations on the holder of the check to make a demand on the drawee for its payment, and to give notice to the drawer of its nonpayment, the act of the agent being the act of the principal. As a general rule, this doctrine may be very correct, and doubtless is.

Restricted agents of corporations, created for the purpose of facilitating commerce, must be governed by the *Lex Mercatoria*, which is but custom recognized and made so by mercantile usage, approved by the wisdom of the age.

I need not go beyond the decision of our Supreme Court to give credit to this proposition, and show that the doctrine of principal and agent, as assumed by a majority of the court, is utterly untenable. The case of Pitts vs. Jones, 9th Fla. Rep., 519, is decisive of this cause. In that case Pitts, the agent of Pierce & Son, purchased as agent, pine logs, for *his principal*, which he was authorized to do. (So was Bull authorized to make the draft, subject matter of this suit.) For the payment of these logs, Pitts drew a draft at sight on Pierce & Son, their principal, in favor of Jones, the vendor, for $168.32-100, which draft, Pierce & Son, the principals, refused to accept, and no notice was given to Pitts, the agent, of the non-acceptance by Pierce & Son, the principals. Jones, the vendor, afterwards brought suit against Pitts, the agent, to recover the amount of the draft which he had drawn upon the principals. Associate Justice Walker, in delivering the opinion of the court, says: "Although the

drawer has no funds in the hands of the drawee, yet if he has a right to expect to have funds in the hands of the drawee to meet the bill, or if he has a right to expect the bill to be accepted by the drawee in consequence of any agreement or arrangement made with him, or if upon taking up the bill he would be entitled to sue the drawee or any other party on the bill, then in every such case he is entitled to strict notice of the dishonor of the bill." See Story on Bills, 311.

The learned Judge goes further, and says: "It is indeed difficult to conceive of any class of persons more strictly entitled to notice than those acting as agents, even if they have no funds in the hands of the drawee, their principal." The record shows that Bull, the agent, drew the check, and had in his own right no interest in the matter, and from his position as agent, he had the right to believe that the check would be accepted and paid by the drawee, in consequence of an agreement with the bank, and the notice of his agency.

Now what protection could the South Western Railroad Bank have, against a profligate or dishonest agent, (which is not the fact in this case,) considering the check, as is assumed by a majority of the court, to be in the nature of a promissory note, and the drawer not entitled to notice? Such a doctrine would entirely destroy these facilities of trade, and clog the wheels of commerce.

The opinion of the majority of the court seems to pre-suppose the fact that under the old common law rule, "that in exchange or commercial agencies, the principal and agent are one and the same person." To the contrary, as in the case at bar, Bull was the agent of a foreign corporation, and his checks or drafts, by the law and usages of merchants, are to be regarded as foreign bills and subject to the customs and usages of merchants.

If to the contrary, no principal could protect himself against his agent, and *vice versa* ; for in the present case it cannot be doubted that if the check had been duly presented

and payment refused, the holder could have given notice to Bull, the agent, and sued him for the amount of the check, and Bull in turn could have sued the drawee upon taking up the check.

The next question presented under the pleadings, is the plaintiff entitled to recover from the defendant, or has he lost his remedy by laches? I think clearly so. For the drawee owes no duty to the holder until after the bill is presented and accepted. See 2 Seldon's Rep., 412; 21 Wend. Rep., 373; 8 English Law and Eq. Rep., 523.

It is also held "that the holder could not sue the drawee unless he had accepted the check; that a demand of payment of a check must be made of the drawee before the holder can sue the drawer." See case decided in 6 Cowen's Rep., 448; 3 Johns. cases, 260.

The drawee of a check is not responsible to the holder until he accepts it. Nor can the holder resort to the drawer until he has used due and legal diligence to obtain payment from the drawee. 6 Wend. Rep., 445. The same principle that applies to bill of exchange and drafts applies to checks, and the drawee owes no duty or responsibility to the holder until after the bill, draft or check, is accepted. Edwards on Bills of Exchange, 396; 2 Seld. Rep., 412; 21 Wend. Rep., 373; 2 Hill., 425.

Checks in law must be considered as bills of exchange, and the holder, if he would preserve his right to resort to the drawer or endorser, must use the same diligence in presenting them for payment and giving notice of the refusal or default of the drawee as would be required of him as the holder of a bill of exchange. 6 Wend., 445. See 3 John,  cases, 5. It was held that the holder of a check was bound to demand payment of the drawee before he could resort to the drawer. Judge Kent, in commenting upon this cause, said, "I consider it a settled rule that a check must be presented for payment in a reasonable time. The question of

reasonable diligence fully arises under the special pleas. ' And the true rule' both as to checks or bills of exchange is that the holder must use reasonable diligence according to the course of business in cases of a similar nature. The question now arises, what is reasonable time, and this depends upon the circumstances of the case. See Story on Promissory Notes, 493,–'4,–'6,–'7 ; also upon the custom and usage of merchants. 2 Hen. & Back., 565, 570 ; 7 Taunt., 570 ; 2 Bacon, 676, 678 ; 1 Saund. Pld. and Evidence, 29.

We are advised by all the authorities that the holder of a check must use due diligence in presenting it to the drawee for payment, and in the event of refusal, in order to bind the drawer, he must give notice of the non-payment by the drawee ; and whenever there is an innovation made upon this rule, it must be shown by the record to relieve the laches affirmatively, that no damage has been occasioned by the delay, otherwise the law presumes injury to the drawer of the check. 2 Hill's Reports, 427 ; 3 Johns. cases, 5 and 259. In these cases the court held that a demand on the drawee must be shown, and that no liability occurred until after the demand. The plaintiff being non-suited in the court below upon action brought upon check four years after the making of it, the Supreme Court affirm the decision on the case. 3 John. cases. The check was not presented for seven months, and the court held that it was incumbent under these circumstances to show affirmatively that the defendant had sustained no damage.

To avoid the plea of laches, the plaintiff must show clearly and affirmatively that the defendant has sustained no damage by the delay.

Injury and damage is presumed by the delay, and this presumption must be overruled by affirmative proof on the part of the plaintiff.

In the case now before the court, the plaintiff did not

even attempt to make such proof, and the record shows laches of four years and four months, and that said check was paid for by the payee in Confederate money, and was to have been discharged upon presentation to the Bank at Charleston in like funds; that Bull, the agent, who drew the check on the Bank, long before the check was presented for payment, had settled his accounts and ceased to be its agent.

This court will, to some extent, take judicial notice of the time when the Confederate government ceased to exist as a government and its money became valueless. It is a violent presumption to say that the South Western Railroad Bank, after being notified by its agent, from his return of his doings as agent, that it did make provision for this debt in the then existing currency, and that it would have been paid if presented, and that the failure to present within a reasonable time, or even before the Confederate government ceased to exist as a government, and that from said failure to present the said check, did produce damage and injury, and that by said laches. The case of the Phœnix Bank clearly sustains the principle. Being guarded in my opinion by almost innumerable authorities of the highest courts, and principles in the text books recognized for ages by the most learned Judges, I am satisfied that the decision of the court below should have been affirmed.