GRAND LODGE KNIGHTS OF PYTHIAS OF FLORIDA, A COR-
PORATION, *Plaintiff in Error*, v. STATE BANK OF FLORIDA,
A CORPORATION, *Defendant in Error*.

## Opinion Filed April 8, 1920.

1. Where there is no dispute as to the character or device used
   in the execution of a written instrument, it is for the court
   to determine whether the device as used constitutes a seal.

2. Where a seal is affixed to the signature of the payor in
   a written promise to pay money reference to the seal in
   the body of the instrument is unnecessary to make the instru-
   ment effective as a sealed instrument.

3. Where a corporation draws a draft on its treasurer, the
   drawer and drawee being one, such draft in legal contempla-
   tion is regarded as a promissory note payable on demand.

4. A negotiable promissory note does not require a seal, but
   there is nothing in its character which prevents the maker
   from affixing a seal to it, if he chooses to do so, and thereby
   rendering it effectual as a contract under seal.

5. The corporate seal, when not indispensible, is always appro-
   priate and may be affixed to all writings to which a corpora-
   tion is a party, unless to do so would defeat the intention
   of the parties, but it is not essential that the seal of a
   corporation be affixed to any of its written contracts except
   such contracts as are required by law to be under seal.

6. Where a corporation executes a promise in writing to pay
   money by affixing to the signature of the maker its corporate
   seal, it is evidence of a purpose to make a sealed instrument
   if nothing appears in the face of the instrument indicating
   a contrary intention and in the absence of fraud.

7. When not prohibited by law corporations have the im-
   plied power to make contracts that are fairly within the
   scope of the purposes of their creation.

8.  A corporation is bound by a promissory note executed by and in the name of its chief officer and its secretary to whose official signature is affixed the corporate seal, although no resolution had been passed authorizing the execution of such instrument, when it appears upon the face of the instrument that it was executed for the benefit of the corporation and it is shown by the pleadings or proof that the money for which the note was executed was advanced to the corporation upon the faith, strength and credit of said instrument.

9.  All allegations of a declaration which are not denied by plea are admitted to be true and need not be proved.

10. A holder for value of negotiable paper otherwise perfect has *prima facie* authority under Section 2948, General Statutes of Florida, of 1906, to complete it by filling in the name of the payee.

11. An alleged alteration of an instrument cannot be shown under a plea of *non est factum*. In order to prove such alleged alteration, it must be specially alleged by plea.

12. A plea to a declaration upon an instrument under seal that the cause of action sued on did not accrue within five years preceding the commencement of the action is not responsive to the declaration as framed and a demurrer to such plea is properly sustained.

13. A private corporation which ratifies or knowingly accepts the benets of an executed contract in writing made by its chief officer which has some fair relation to the conduct of its legitimate business cannot at pleasure repudiate the contract to the injury of the other contracting party on the ground that it is *ultra vires* when there is no law prohibiting the making of such contract.

A writ of error to the Circuit Court for Duval County, Daniel A. Simmons, Judge.

Judgment affirmed.

*J. Emmett Wolfe* and *Hilton S. Hampton,* for Plaintiff in Error;

*Martin H. Long,* for Defendant in Error.

Jones, Circuit Judge.—State Bank of Florida, a corporation, hereinafter referred to as the bank, sued the Grand Lodge of Knights of Pythias of Florida, a corporation, hereinafter referred to as the lodge, in the Circuit Court for Duval County to recover money alleged to be due the bank by the lodge upon an instrument of writing in the words and figures as follows:

Tavares, Fla., Mch. 21st., 1910.

"Wm. C. West, G. M. of E., Grand Lodge of Florida, K. of P., Pay to State Bank of Florida or order, Thirty-six Hundred and four and 08/100 Dollars for 1910 Grand Lodge Pay Roll.

H. H. Richardson, G. C.

$3604.08.

W. H. Latimer, G. K. of R. & S."

(Corporate seal)
(Grand Lodge )
(Knights of )
(Pythias.      )

The declaration consists of seven counts.

The first count declares upon the said instrument as a bill of exchange under seal alleging presentation for acceptance and dishonor with notice to defendant. The second count declares on the instrument as a bill of exchange under seal and alleges presentation and non-

payment, but no notice to defendant. The third count alleges that the defendant by its Grand Chancellor and its Grand Keeper of Records and Seal, by its instrument in writing under seal dated March 21st, 1910, directed to William C. West, G. M. of E. of the defendant required the said William C. West as such G. M. of E. of the defendant to pay to the plaintiff the sum of three thousand six hundred four and 08/100 dollars ($3604.08) for the 1910 Grand Lodge Pay Roll, and the plaintiff alleges that the Grand Lodge of Florida K. of P. met in the City of Jacksonville in 1910, that the plaintiff's banking house was then and there in the City of Jacksonville, Florida, that on the faith, strength and credit of the said order or bill of exchange it duly advanced to the defendant for the purpose of meeting its pay roll, said sum of $3604.08, and that thereafter divers and sundry payments were made on account of the sum so advanced by it, until there is now due thereon the sum of Fourteen Hundred Dollars, together with interest thereon from March 21, 1915, but the defendant has not, nor has any other person paid the said $1400, or said interest thereon, or any part thereof. The fourth count declared upon the instrument as a promissory note under seal, and the fifth, sixth and seventh are common counts.

The lodge pleaded to the common counts, that it never promised as alleged, that it never was indebted as alleged, and payment. After a demurrer to the first four counts of the declaration had been overruled the lodge filed to the whole declaration pleas numbered four, five, six, seven, eight, nine and ten, omitting the formal parts and unnecessary averments, the substance of which is as follows: 4th. That the supposed writing obligatory mentioned in the declaration is not its writing obligatory.

5th.　That at the time of the execution of the bill of exchange or warrant described in the declaration that the deefndant was and always has been since said time a corporation organized and existing under Chapter 4858 Laws of Florida, 1899, its bylaws, rules and regulations being published, and that the issuance of said instrument was not authorized by said corporation at the time of its issuance, nor has said corporation acquiesced in or ratified the issuance and negotiation of said instrument by payment, or otherwise.　6th.· That it is a corporation created and existing by virtue of Chapter 4858 Laws of Florida, 1899, its by-laws, rules and regulations being published and the proceedings of its Grand Lodge or governing body in the year 1910 were published, and that neither by its charter, rules or regulations of its Grand Lodge or governing body are its officers permitted to draw any warrant or order save upon its own funds on deposit; and no power or authority is given or vested in its officers or any other person to issue a warrant save in the manner above set forth, nor is any authority given or vested in its officers or any other person for or on its behalf to negotiate or pledge its warrant or bill of exchange as collateral security or otherwise to any person or persons or corporation, and at the time of drawing and executing of the said warrant or bill of exchange sued upon there was not in the hands of the said William C. West upon which said warrant or bill of exchange was drawn, funds of this defendant sufficient to pay same, hence the drawing of said warrant or bill of exchange and its use by said West as collateral security for a loan were all in violation of the charter, rules and regulations of defendant.　7th.　Seventh plea is same as 6th plea except it is alleged that the facts set up in the

plea were known to the cashier of the bank at the time of acceptance of the warrant. 8th. Eighth plea is that the cause of action sued on did not accrue within five years preceding the commencement of the action. 9th. As an equitable plea contained the averments of the seventh plea as to the organization of the lodge as a corporation, the publication of its by-laws and regulations and the want of authority of its officers to execute a warrant or bill of exchange except as therein stated, and alleges that the bank with knowledge actual or constructive of the facts recited negligently and carelessly and in fraud of the rights of the lodge permitted the treasurer of the lodge, one William C. West, to hypothecate and pledge the warrant or bill of exchange sued on with the bank to secure a loan thereon, knowing at the time there were no funds in the treasury of the lodge with which to pay the warrant, although it was payable on demand, and that the bank accepted the warrant as a personal obligation of the said West and negligently and carelessly in fraud of the rights of the lodge permitted West to use it in violation of the constitution and by-laws of the lodge as collateral security for a personal obligation of West, and that the bank permitted the warrant to remain in its possession from about ——— day of March, 1910, until ——— day of December, 1915, without demand, notice or presentation to the lodge, without knowledge of the lodge, thereby aiding and abetting West, the treasurer of the lodge, to conceal a large shortage in his accounts as treasurer; that at the time West hypothecated the warrant he was not insolvent, but that during the time the warrant was secretly held by the bank West became and is now insolvent. 10. As an equitable plea contains practically the same averments as the

ninth plea, and further alleges that the bank permitted the warrant to remain in its possession without payment by West, from about ——— March, 1910, to December, 1915, during which time there came into the hands of West as treasurer, ample funds with which to pay said warrant upon demand of the bank; that West is now and was insolvent at the date the lodge discovered the non-payment of the warrant, and that no reimbursement can now be had from West, although the lodge had already paid into the hands of West as treasurer the amount of such warrant, and that West had been credited in his accounts with the lodge the amount of the warrant.

The 5th, 6th, 7th, 9th and 10th pleas so far as they applied to the 5th, 6th and 7th counts of the declaration, were stricken on motion, and demurrer was sustained to the 5th, 6th, 7th, 8th, 9th and 10th pleas.

Amended pleas were filed as follows: Amended 5th plea contained same averments as original 5th plea with the addidtional averment that the lodge received no consideration for the execution of the instrument described in the declaration.

Amended 6th plea is the same as original 6th plea except that it alleges that the rules and regulations of the lodge were published each year since date of its incorporation, and that the limited authority of the officers of the lodge as stated in the plea was known to the bank, and also that West deposited the warrant with the bank as collateral security for a loan with the bank in violation of the charter, rules and regualtions of the lodge.

The amended seventh plea averred the same facts as original 6th plea, and further alleged that the officers

of the lodge had no authority to draw any order or warrant save by resolution of the Grand Lodge upon its own funds upon deposit with its treasurer, and that the lodge did not by resolution authorize the issuance of said warrant, and such facts were known to the cashier of the bank at the time of acceptance of said warrant, and that the lodge received no consideration from the bank for said instrument.

The amended 9th plea is the same as the original 9th plea, except it contains averments that the constitution, by-laws and reports of its officers were published in the year 1910, and that no authority is given any officer of the lodge except after resolution by the lodge to draw a warrant upon funds of the lodge in its treasury.

The 10th amended plea in addition to the facts set up in the original 10th plea alleges that the bank on the 21st March, 1910, had due notice that there was no authority vested in any of its officers to issue a warrant or bill of exchange negotiable in form or fact, nor except upon funds already in the treasury of the lodge, and that the lodge received no consideration for the warrant sued on.

A demurrer was sustained to all the amended pleas and the case submitted to the jury upon the issues made by the plea *non est factum* and pleas to the common counts. After hearing the testimony the court directed a verdict for the bank, upon which judgment was entered. To the overruling of a motion for a new trial the lodge excepted, sued out writ of error and has assigned a large number of errors. At the trial the lodge offered no evidence, and the bank examined only one witness, Mr. Richardson, who testified that he was Grand

Chancellor of the lodge at the time of its annual convention in March, 1910; that the Grand Chancellor appointed a committee on mileage and per diem, whose duty it was to ascertain and report to the lodge the mileage travelled by each of the delegates attending the convention then in session. The number of days for which each delegate was entitled to receive pay. That the committee made its report which was adopted by the lodge; that he, as Grand Chancellor, and W. H. Lattimer as Grand Keeper of Records and Seal, signed the warrant or instrument sued upon, and that it bore the impression of the seal of the lodge; that said instrument was an order on the Grand Master of Exchequer to pay the mileage and per diem due the delegates attending the convention, and that it was customary to issue such warrant or voucher at the close of such conventions of the lodge; that there was no resolution of the lodge authorizing the issuance of the warrant, and that the constitution of the lodge, among other things, provided that the Grand Chancellor should sign all orders drawn on the Grand Master of Exchequer for such sums as may be voted by the Grand Lodge. The report of the committee on mileage and per diem showing the name of each delegate and the amount due for mileage and per diem, aggregating $3,-604.08, and that same was adopted, was offered and received as evidence.

The instrument sued upon was offered and received in evidence over the objection of the lodge on the ground that it was not in contemplation of law a sealed instrument, but was merely an order or warrant of a corporation ordering its treasurer to pay certain sums of money out of its treasury.

The foregoing embraces in substance all the testimony upon which the court directed a verdict for the bank.

The first assignment of error is that the court erred in admitting as evidence the instrument sued upon because it is not an instrument under seal and was issued without authority of the lodge.

It is contended that there is nothing in the language of the instrument indicating an intention to make it a speciality, and that the seal of a corporation is the signature only of the corporation and that there should be something, either in the character of the instrument, or its wording, to evidence such intention; otherwise, a corporation could never sign with its corporate seal without being bound as on a specialty and thus every written contract, however, simple, of a corporation signed with its corporate seal becomes an instrument under seal and is protected by the twenty-year statute of limitations. While the same contarct of an individual not under seal comes under the five-year statute of limitations.

When there is no dispute as to the character or device used in the execution of a written instrument it is for the court to determine whether the device as used constitutes a seal. Langley v. Owens, 52 Fla. 302, 42 South. Rep. 457.

Where a seal is affixed to the signature of the payor in a written promise to pay money reference to the seal in the body of the instrument is unnecessary to make the instrument effective as a sealed instrument. Langley v. Owens, *supra*.

Where a corporation draws a draft on its treasurer, the drawer and drawee being one, such draft in legal

contemplation is regarded as a promissory note payable on demand.   Bailey v. South Western Railroad Bank, 11 Fla. 266.

A negotiable promissory note does not require a seal, but there is nothing in its character which prevents the maker from affixing a seal to it, if he chooses to do so, and thereby rendering it effectual as a contract under seal.   In Comerford v. Cobb, 2 Fla. 418, it was held that the word seal written in a scrawl or parentheses following the signature of the payor indicates the intention of the party executing the instrument to make it a speciality, although there was no reference made to the seal in the body of the note.  In Langley v. Owens, *supra,* the instrument in question was a plain promissory note where the payor's signature was followed by the letters L. S. in parantheses with no reference to a seal in the body of the note; and it was there held that "under the statute providing 'that a scrawl or scroll printed or written, affixed as a seal to any written instrument, shall be effectual as a seal,' a scrawl or scroll affixed as a seal to the signature of the maker of a promissory note is effectual as a seal and when such scrawl or scroll, printed or written, appears affixed to the maker's signature in the place usually occupied by the seal, it is in the absence of anything in the note showing a contrary intention and in the absence of fraud, sufficient to give it effect as a seal, and that where the letters L. S. enclosed within parantheses opposite the signature of the maker of a promissory note in the usual place for the seal but with no reference to it in the body of the instrument whether written or printed it is evidence of a purpose to make a seal instrument."

31—Vol. 79

The statute which provides that a scrawl or scroll shall be effectual as a seal is for the sake of convenience amounting almost to a necessity. It substitutes the characters named for the troublesome and inconvenient wax, wafers or other devices formerly used as seals. When an individual executes a promissory note and affixes to his signature the substitute provided by statute as a seal, the note is a sealed instrument. Here a corporation executes a written contract for the payment of money and affixes thereto, not a substitute, but the original device adopted by it as its corporate seal and now contends that the instrument is not a speciality, but that the seal is the signature of the corporation, or was used to authenticate the signatures of its officers—in other words that the seal as used is not a seal. An individual who executes a promissory note under seal is not permitted to deny that it is a sealed instrument, without showing fraud, or that there is something in the instrument itself to indicate a contrary intention.

There is no reason why a corporation which affixes its corporate seal to its written promise for the payment of money should be granted an immunity against the bar of the twenty-year statute of limitations not accorded an individual except that it be out of deference to the ancient practice of affixing the corporate seal to written contracts of corporations which has been long obsolete and is therefore not a valid reason.

The contention that the common seal of a corporation is its signature when used in written contracts or that it is necessary to authenticate the contract as the act of the corportaion is not well founded; neither is it supported by authorities cited. Such a rule was to a certain extent the ancient English doctrine, but even

in England it has been greatly modified. It has never been the general rule in this country. The American rule with some of the reasons in its support was stated by the court in the case of Chicago, B. & Q. R. R. Co. v. Coleman, 18 Ill. 297, 68 Am. Dec. 544, as follows: "The old doctrine that corporations can only be bound by act under their corporate seal has been long exploded. They have become numerous and their operations extend to almost every enterprise of the country demanding such powers and faculties within their sphere of action as belong to natural persons in the prosecution of like enterprises, and being intangible and invisible beings created by law they can exercise them through natural persons only. Unless they may be bound in the ordinary affairs of the corporation by the acts and admissions of their officers, they would enjoy an immunity incompatible with the rights of individuals and destructive of the objects of their creation."

The seal, when not indispensable, of course is always appropriate, and may be affixed to all writings to which a corporation is a party, unless to do so would defeat the intention of the parties to the contract; but there is no law requiring the seal of a corporation to be affixed to any of its written contracts except such contracts as are required to be under seal. The general and well established rule seems to be that a corporation need not do any act or execute any contract under its seal, except it be such as to require a seal when done or executed as the contract of a natural person. Ross v. City of Madison, 1 Ind. 281, 48 Am. Dec. 361; Mott v. Hicks, 1 Cow. (N. Y.) 513, 13 Am. Dec. 550; Commercial Bank of New Orleans v. Newport M. Co., 1 B. Mon. (Ky.) 13, 35 Am. Dec. 171; Barker v. Mech. Fire Ins. Co., 3 Wen-

dell (N. Y.) 94, 20 Am. Dec. 664; Everett v. United States, 6 Porter 166, 30 Am. Dec. 584; Lathrop v. Commercial Bank of Scioto, 8 Dana (Ky.) 114, 33 Am. Dec. 481; Duke v. Markham, 105 N. C. 131, 10 S. E. Rep. 1017, 18 Am. St. Rep. 889; Muscatine Water Co. v. Muscatine Lumber Co., 85 Iowa 112, 52 N. W. Rep. 108, 39 Am. St. Rep. 284; 1 Morawetz on Private Corporations, Sec. 338.

The case of Williams v. Peninsular Grocery Co., 73 Fla. 937, 73 South. Rep. 517, relied upon by the lodge does not support its contention. The question in that case was quite unlike the one here. In that case the suit was against an indorser of a promissory note of a corporation upon which there was no impression of the common seal of the corporation but the word seal was written after the signature of the corporation. The defendant in that case contended that because the instrument sued upon purported to be a sealed instrument it created no liability against the corporation maker because it did not bear the impression of the corporate seal and therefore the instrument being a sealed instrument, an action of assumpsit would not lie against the endorser. The court in passing on the questions thus presented said: "Under the provisions of Section 2940 General Statutes of Florida of 1906, neither the validity nor the negotiable character of a promisosry note is affected by the fact that the instrument bears a seal;" and further, "a promissory note executed by a corporation under seal does not thereby become a sealed instrument so as to affect either the negotiability or character of the instrument or the remedy to enforce it." The law as stated in that case applies to promissory notes executed by natural persons and corporations alike. It was not held that the common seal of a corporation affixed to its prom-

issory note is not a seal, nor that such sealing of such note did not make it a speciality.

In Somers v. Florida Pebble Phosphate Co., 50 Fla. 275, 39 South. Rep. 61, it was held that while a promissory note signed in the name of the corporation by its president and attested by its secretary with the corporate seal attached, reference being made to the seal in the body of the instrument which also recited that it was a promissory note was not necessarily a sealed instrument as to the stockholders who endorsed the instrument, it was the bond of the company.

There is no general statute and no provision in the Special Act, Chap. 4858 Acts of 1899, incorporating the lodge forbidding it to contract indebtedness. But among other powers granted, the lodge is empowered to contract and be contracted with, to sue and be sued, to acquire by purchase real and personal property and to convey the same, to have a common seal, with the further provision that the members of the lodge shall not be liable individually or collectively for the debts of the lodge.

When not prohibited by law corporations have the implied power to make contracts that are fairly within the scope of the purposes of their creation. McQuaig v. Gulf Naval Stores Co. 56 Fla. 505 47 South. Rep. 2; Cotton States Belting & Supply Co. v. Florida R. Co., 69 Fla. 52, 67 South. Rep. 568.

Under its charter the lodge was authorized to borrow money and to execute a promissory note or other evidence of indebtedness for money so acquired with which to discharge a liability incurred in the holding of its annual convention for the transaction of its legitimate business. The instrument sued on was executed by its Grand Chan-

cellor, the chief officer of the lodge, attested by its Grand Keeper of Records and Seal, to whose official signature was affixed the corporate seal. The instrument shows upon its face that it was executed for the benefit of the lodge. It is alleged in the third count of the declaration that the lodge by its officers, named executed the instrument and that upon the faith, strength and credit of said instrument the bank advanced the money to the lodge for the purpose of meeting its pay roll. The only issue at the trial was that presented by the plea denying the execution of the instrument by the lodge. The material averments of the declaration not denied, were thereby admitted.

Under the evidence and the one issue presented by the pleadings at the trial it is our opinion that the lodge is bound by the instrument sued on; that it is in contemplation of law the promissory note under seal of the lodge, and the fact there was no resolution authorizing its execution is insufficient to defeat the bank in the enforcement of its just claim.

The third assignment of error is abandoned.

The second assignment is that the court erred in sustaining objection to the following question to the witness on cross-examination: State whether or not on the 21st of March, 1910, the lodge was indebted to the bank in any sum. The fourth assignment is that there was error in sustaining objection to the following question to the witness on cross-examination: State whether or not the money for which this warrant was issued was ever paid to the lodge. These two assignments must fail because there was no plea of failure of consideration but to the contrary it was admitted by the pleadings that the bank,

on the faith and credit of the instrument sued on, advanced to the lodge the money, therefore the questions sought irrelevant testimony.

The fifth assignment is that the court erred in striking the following question and answer of the witness: Q.  Will you swear that when you signed that warrant it was marked payable to the State Bank of Florida? A.  I will not.  There was no error in this ruling because a holder for value of negotiable paper otherwise perfect has the right to fill in the name of the payee.  Sec. 2948 General Statutes of Florida, 1906, Compiled Laws, 1914.  If it was sought by such testimony to show that the instrument had been altered, an alleged alteration cannot be shown under the plea of *non est factum*. Tedder v. Fraleigh-Lines-Smith Co., 55 Fla. 496, 46 South. Rep. 419.

The sixth and seventh assignments are abandoned. Eighth and ninth assignments question the correctness of the instructions of the court directing verdict for the bank on the ground that the instrument sued on was not a sealed instrument, therefore there was a variance between the proof and allegations of the declaration. From what has been said this assignment must fail as also the tenth assignment, which relates to the court's refusal to grant motion for new trial upon the grounds which have already been considered.

Assignments eleven to fifteen are abandoned.

The nineteenth assignment questions the ruling of the court in sustaining demurrer to the eighth plea, pleading the five-year statute of limitations.  There was no error here because the cause of action is a sealed instrument.  Comerford v. Cobb, 2 Fla. 418; Johnson v. Wakulla County, 28 Fla. 720, 9 South. Rep. 690.

Assignments sixteen to twenty-six, exclusive of the nineteenth, challenge the ruling of the court in sustaining demurrers to all other pleas and amended pleas. It is not deemed necessary to discuss in detail each of these pleas as the defense pleaded in each is that the execution of the instrument sued on was an act *ultra vires*. It is charged that the bank was guilty of fraud in withholding demand of payment of the instrument until it was discovered that West was a defaulter and had become insolvent, and that therefore the bank should stand the loss.   It is admitted by the pleas and by counsel for the lodge in their brief that West used the warrant as collateral to his note to secure from the bank $3604.08 with which he discharged the 1910 pay roll of the lodge.   It is admitted that subsequently in July, 1910, the lodge collected from subordinate lodges and turned over to West a sufficient sum of money to cover the amount of the pay roll, but it is charged that West failed to pay to the bank the money it had advanced, but misappropriated it, became a defaulter and insolvent. There is no merit in the equitable pleas.   The lodge held out West as its treasurer, a man worthy of trust and confidence, and it was not the duty of the bank to supervise his conduct as an officer of the lodge, nor to keep itself advised of the condition of his accounts, but the bank had the right to hold the warrant and make demand by suit at any time within twenty years from its date. The defense presented by the pleas that the execution of the warrant was an act *ultra vires* cannot relieve the lodge of liability in view of the admissions of the lodge by its pleas and through its counsel that it received the money advanced by the bank and used it in discharging its pay roll.   McQuaig v. Gulf Naval Stores Co., 56 Fla.

505, 47 South. Rep. 2; Beekman v. Sontag, 67 Fla. 293, 64 South. Rep. 948.

There being no reversible error the judgment should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837 Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the judgment herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR. WHITFIELD AND WEST, J. J., concur.

ELLIS, J., dissents.